**In re Charles H. MICHAELSON and Louise Michaelson, Debtors.**

**Bankruptcy No. 3–95–4460.**

United States Bankruptcy Court, D. Minnesota, Third Division.

Oct. 4, 1996.

Kenneth E. Keate, St. Paul, MN, for Debtors.

Stephen Creasey, Minneapolis, MN, for Chapter 13 Trustee.

Michael Fadlovich, Minneapolis, MN, for U.S. Trustee.

## ORDER DENYING CONFIRMATION

DENNIS D. O'BRIEN, Chief Judge.

This matter is before the Court on continued objection by the Internal Revenue Service ("IRS") to the confirmation of Debtors' Chapter 13 plan. The issue is whether a portion of the Debtors' 1995 income tax liability is a pre-petition claim. The matter was heard on June 13, 1996; appearances are as noted in the record at the hearing; and, the Court now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

---

## I

### FACTS

This proceeding involves a dispute between the IRS and the Debtors as to whether a portion of the Debtors' liability for 1995 income taxes can be assigned to income earned prepetition; and, therefore, be classified as a prepetition claim. The Debtors filed their Chapter 13 petition on September 15, 1995. The IRS has not filed a claim pursuant to 11 U.S.C. § 1305 for the Debtors' 1995 taxes, and contends that the entire 1995 income tax liability is a postpetition claim. On March 25, 1996, the Debtors filed a claim in the amount of $2,744.25 on behalf of the IRS for, what the Debtors contend is, prepetition liability for their 1995 income taxes. The Debtors are calendar year taxpayers. The amount of the claim, as filed by the Debtors, is equal to the first two quarterly installments that the Debtors were required to pay, but did not pay, pursuant to 26 U.S.C. § 6654.[1] The Debtors' plan proposes to pay the claim as a priority claim pursuant to 11 U.S.C. § 507(a)(8)(A)(iii). The IRS objects to confirmation, arguing that the filing of the claim by the Debtors, and its classification and treatment in the plan, are improper.

## II

### DISCUSSION

**A Logical Footprint Analysis.**

11 U.S.C. § 507(a)(8) deals with priority distribution in bankruptcy cases. Except for § 507(a)(1), the provision deals with prepetition claims. 11 U.S.C. § 507(a)(8) provides these priorities:

(8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

Section 507(a)(8), including (a)(8)(A)(iii), deals with prepetition claims. See: *Missouri Department of Revenue v. L.J. O'Neill Shoe Company*, 64 F.3d 1146, 1151 (8th Cir.1995).

In order to determine whether the Debtors' 1995 taxes qualify for priority distribution under § 507(a)(8)(A)(iii), it seems necessary to determine whether the taxes qualify as a prepetition claim. Claim is defined in § 101(5)(A) as a "right to payment". To the extent that the IRS had a right to payment of a portion of the Debtors' 1995 income taxes on September 15, 1995, the date of bankruptcy filing, a prepetition claim should exist; and, the claim should have priority under 11 U.S.C. § 507(a)(8)(A)(iii).

The issue, then, should be, when did the IRS have a right to payment of the Debtors' 1995 income taxes. The Debtors contend their income tax liability arose when they were required to make quarterly installment payments. The Debtors cite 26 U.S.C. § 6654, which sets out the number of required installments and the installment due dates for a taxpayer to pay an estimated portion of income tax, in support of their position.

The IRS argues that income tax liability arose, at the earliest, on December 31, 1995. That was the first date the Debtors' tax liability was capable of assessment for 1995, as it was the end of the Debtors' tax period. Logic supports the IRS position over the Debtors'.

A right to payment of the tax cannot exist without a corresponding liability for pay-

---

**1.** The statute requires that taxpayers pay quarterly installments during a tax period toward potential tax liability for the period. Payments are due on April 15, June 15, September 15, and January 15 of the following taxable year for taxpayers whose taxable periods are calendar years.

ment. Liability for income taxes arises at the end of a taxpayer's tax period, when all events have occurred that are necessary to determine whether a tax is owing for the period. Tax liability is determined by computing taxable income for the entire year, based on income, deductions, exemptions, credits, etc., for the entire year. Tax related events are not restricted in application to the quarter in which they occur, but apply as part of a gross calculation of events for the entire taxable year. Thus, for instance, income realized in one quarter can be subject to deductions based on events occurring in another quarter. It seems evident then, that the IRS had no right to payment of 1995 taxes from the Debtors at filing of their bankruptcy case on September 15, 1995.

The payment of installments pursuant to 26 U.S.C. § 6654 does not constitute the payment of tax liability. Rather, the payments are required escrow against potential future tax liability. At the time that the installments are due, no tax liability exists. Furthermore, the IRS had no right to payment of installments from the Debtors on the date of bankruptcy filing, nor would the IRS ever have a right to payment of the installments.

The required installments are not related to current quarterly income. The obligation to pay each quarterly installment is limited in amount to 25% of the lesser of: 100% of a taxpayer's actual prior year's tax, or 90% of what ultimately is the assessed tax for the current tax year. See: 26 U.S.C. § 6654(d). Thus, if there ultimately is no tax owing for the year, no installment payments can ever have become due. Accordingly, on the date that the bankruptcy petition was filed, the IRS had no right to any installment payments from the Debtors because no taxes for the current year were capable of assessment.

Even after a tax is capable of assessment, and it can be determined that the required installments have been underpaid, or unpaid entirely, the IRS does not acquire a right to payment of the failed installments. At that point, the IRS has a right to payment, regarding the failed installments, only to inter-

est and penalties computed against the installment deficiency. See: 26 U.S.C. § 6654(a). The IRS also has, of course, a right to payment for the assessable tax.

To what then does 11 U.S.C. § 507(a)(8)(A)(iii) apply? Legislative history of the provision suggests that it was intended to apply to those situations where the tax period has closed and the tax is capable of assessment; but, where the tax has not been assessed due to negotiations, or a dispute that is in process of resolution, regarding the assessment at filing of the bankruptcy case.[2] The following are pertinent Legislative statements concerning the provision:

> Third. Income and gross receipts taxes not assessed before the petition date but still permitted, under otherwise applicable tax laws, to be assessed. Thus, for example, a prepetition tax liability is to receive sixth priority under this rule if, under the applicable statute of limitations, the tax liability can still be assessed by the tax authority. This rule also covers situations referred to in section 507(a)(6)(B)(ii) of the Senate amendment where the assessment or collection of a tax was prohibited before the petition pending exhaustion of judicial or administrative remedies, except that the House amendment eliminates the 300–day limitation of the Senate bill. So, for example, if before the petition a debtor was engaged in litigation in the Tax Court, during which the Internal Revenue Code [Title 26] bars the Internal Revenue Service from assessing or collecting the tax, and if the tax court decision is made in favor of the Service before the petition under title 11 is filed, thereby lifting the restrictions on assessment and collection, the tax liability will receive sixth priority even if the tax authority does not make an assessment within 300 days before the petition (provided, of course, that the statute of limitations on assessment has not expired by the petition date).

(124 Cong Rec H11112 (daily ed. Sept. 28, 1978); S17429 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini)

---

**2.** This limited application was rejected by the Eighth Circuit in *Missouri Department of Revenue*

*v. L.J. O'Neill Shoe Company,* 64 F.3d 1146, 1151, n. 6 (8th Cir.1995).

If the foregoing analysis were applied, it seems clear that the Debtors' liability for 1995 income taxes could only first arise on December 31, 1995, at the close of their tax period, when their income taxes for the year became capable of assessment. At that point, the IRS would have a right to payment of the tax, even though actual payment was not due until April 15, 1996. It would follow that: the Debtors' entire 1995 income tax liability arose postpetition; the IRS' right to payment of the tax first arose postpetition; and, the entire claim for 1995 income taxes would be a postpetition claim. Accordingly, it would be found that the Debtors' proposed plan improperly classified the IRS claim for priority distribution as a prepetition claim, and that confirmation should be denied on that basis.[3] But, the foregoing analysis cannot be applied because the footprint does not fit the *O'Neill Shoe.*

## Bound By The *Shoe.*

The law of *Missouri Department of Revenue v. L.J. O'Neill Shoe Company,* 64 F.3d 1146 (8th Cir.1995) is this:

1. 11 U.S.C. § 507(a)(8)(A)(iii) addresses only prepetition taxable activity or events that result in prepetition income tax claims;

2. income tax claims, for the tax period in which a petition is filed by a Chapter 11 corporate debtor, that relate to prepetition income, are prepetition claims entitled to priority of distribution under 11 U.S.C. § 507(a)(8)(A)(iii);

3. income tax claims, for the same period, that relate to the Chapter 11 corporate debtor's postpetition income, are postpetition administrative expense claims.

3. The Debtors argue that they had a right to file the IRS claim pursuant to 11 U.S.C. §§ 1305 and 501(c). According to the Debtors, while the IRS is entitled to object to the claim, objection to the claim is not a proper basis for objecting to confirmation. The IRS counters that the Debtors had no right to file postpetition claims on behalf of the IRS because, with respect to postpetition claims, the IRS is not a creditor of the Debtors. See: 11 U.S.C. § 101(10). 11 U.S.C. § 501(c) allows debtors to file claims only on behalf of creditors. Additionally, the IRS argues that the plan improperly classifies the IRS claim, and that its objection to confirmation is proper. The burden is on the Debtors, in a confirmation pro-

In *O'Neill Shoe,* the debtor filed for relief under Chapter 11, eleven months into its taxable year. Corporations are not allowed under the Internal Revenue Code to bifurcate their tax periods upon filing under Chapters 7 or 11 for federal income tax purposes.[4] Corporations are specifically prohibited from bifurcating their income tax periods under the Bankruptcy Code for purposes of state and local income taxes. See: 11 U.S.C. § 346(c)(1).

The state of Missouri filed an administrative expense claim in the estate for all income taxes subsequently assessed for the tax period. The Eighth Circuit Court of Appeals ruled that, because the taxes were assessed after the bankruptcy petition was filed, a portion of the tax was necessarily a prepetition priority claim under the plain meaning of § 507(a)(8)(A)(iii). Missouri argued unsuccessfully that if the plain meaning was truly applied to § 507(a)(8)(A)(iii), no portion of any tax assessed postpetition would ever be a postpetition claim, whether relating to current or subsequent tax periods. The Circuit Court, however, said:

We ... agree ... that the "plain meaning" reading provided by the lower courts presents some conceptual difficulties and structural inconsistencies in this case ...

We find, however, that subsection (iii) lends itself to another "permissible meaning" that "produces a substantive effect that is consistent with the rest of the law." *United Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). We believe that subsection (iii) can be read, like the other subsections of 507(a)(7)(A), to address only prepetition taxable activity or

ceeding, to show that the claims are properly classified and treated. The burden is not met simply by filing a claim on behalf of an alleged creditor, and then classifying and treating the claim in the plan as filed.

4. Individual Chapter 7 and 11 debtors are allowed by the Internal Revenue Code to make an election to bifurcate their income tax periods upon filing of the petition. See: 26 U.S.C. § 1398. Chapter 7 and 11 individual debtors are required to bifurcate tax periods for state and local income taxes under the Bankruptcy Code. See: 11 U.S.C. §§ 728(a) and 1146(a).

events. See 11 U.S.C. §§ 507(a)(7)(A)(I) (prepetition tax year ending on or before date of filing) & 507(a)(7)(ii) (tax assessed within the 240 days prior to filing); see also *Small Business Admin. v. Preferred Door Co., Inc. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir.1993) (noting that section 507(a)(7) deals with prepetition taxes). Thus, we interpret section 507(a)(7)(A)(iii) to address taxes derived from prepetition events "not assessed before, but assessable ... after, the commencement of the case." Such an interpretation, we believe, is consistent with the related subsections of 507(a)(7)(A) and avoids results which would be at odds with other Bankruptcy Code sections relevant to this question of distribution priorities. [FN6]

[The] portion of each of MDOR's income tax claims that relates to prepetition income of the debtors is a claim for "a tax of a kind specified in section 507(a)." Accordingly, under the terms of section 503(b)(1)(B)(I), that portion of each of MDOR's claims is not entitled to an administrative expense priority. However, the portion of the tax claim that is derived from postpetition income of the debtors is not a prepetition tax claim under subsection (iii) and thus is entitled to administrative expense treatment.

(*O'Neill Shoe*, at 1150, 1151, footnote omitted).[5]

Accordingly, this Court is bound by *O'Neill Shoe*, and must rule that the portion of the Debtors' 1995 income tax liability, if any, that relates to prepetition income qualifies as a prepetition tax claim entitled to priority under 11 U.S.C. § 507(a)(8)(A)(iii).[6] But, how is the prepetition claim to be determined? Neither the *O'Neill Shoe* court, nor the Debtors in this case, have explained.

**A Seemingly Useless Shoe.**

The Chapter 11 Debtor in *O'Neill Shoe* was prohibited by the Internal Revenue Code and the Bankruptcy Code from bifur-

cating its tax period in the year of filing of the bankruptcy case. So are these Chapter 13 Debtors. The Internal Revenue Code allows only Chapters 7 and 11 individuals to bifurcate tax periods. See: 26 U.S.C. § 1398. The Bankruptcy Code does not specifically prohibit Chapter 13 debtors from bifurcating their tax periods for federal income taxes, but neither does the Code specifically permit bifurcation. 11 U.S.C. § 346(d) requires that only Chapter 13 debtors, not their estates, are liable for state or local income taxes. The Debtors concede in their brief, filed in support of confirmation, that they are not permitted to bifurcate their 1995 tax year. See: *Debtors' Memorandum In Support Of Confirmation Of Debtors' Chapter 13 Plan*, June 6, 1996, p. 4.

The state of Missouri argued, in *O'Neill Shoe*, that the income tax for a taxable year cannot be split into a prepetition and postpetition claim without violating both the tax and bankruptcy laws. This was the state's argument, as recited by the *O'Neill Shoe* court:

MDOR argues that allowing part of its income tax claim to be treated as a prepetition tax claim and part of its claim to be treated as a postpetition tax claim is inconsistent with provisions of tax and bankruptcy law governing the treatment of corporate income taxes in bankruptcy proceedings. The Internal Revenue Code provides that in cases of corporations in bankruptcy, "no separate taxable entity shall result from the commencement of a case under Title 11 of the United States Code." 26 U.S.C. § 1399. The Bankruptcy Code provides: The commencement of a case under this title concerning a corporation ... does not effect a change in the status of such corporation ... for the purposes of any state or local law imposing a tax on or measured by income. Except as provided in section 728 of this title, any income of the estate ... in such case may be taxed only as though such case had not been commenced. 11 U.S.C. § 346(c)(1). MDOR argues that under section 346(c)(1)

---

**5.** § 507(a)(7) referred to in *O'Neill Shoe* has since been renumbered to § 507(a)(8).

**6.** The IRS argues that *O'Neill Shoe* is not applicable to Chapter 13 cases, but suggests no rea-

sons other than that the decision does not mention Chapter 13, and that bad law should be contained wherever possible.

and 26 U.S.C. § 1399, the corporate tax year cannot be split into a prepetition and a postpetition tax year, and income to the estate of a corporate debtor should be taxed as if the corporation had not filed bankruptcy. [FN7] MDOR contends that dividing the tax claim into a prepetition portion and a postpetition portion essentially splits the debtors' corporate income tax year between the prepetition debtor and the postpetition estate. Thus, MDOR concludes that we are treating the debtor and the estate as separate taxable entities in violation of section 346(c)(1). Cf. L. King, 3 Collier on Bankruptcy, P 503.04 at 503–39 to 503–40 n. 56 (1995) (because the taxable year of a corporation remains unchanged under 346(c)(1), prepetition income tax might be administrative expense if the taxable year closes postpetition and the court determines that the taxes were incurred at the close of the taxable year).

(*O'Neill Shoe,* at 1151, 1152, footnote omitted).

The Court of Appeals made this response to the argument:

> We believe MDOR's analysis is based on a misconception of the function of an administrative expense determination. We are not allowing the debtor to be "taxed" as two separate entities. The state of Missouri still taxes each of the debtors, consistent with the above provisions, as it would outside of bankruptcy—as one continuous corporate entity. The amount of that tax constitutes MDOR's claim against the estate. Only then, consistent with bankruptcy law, do we determine the priority with which MDOR's tax claim against that single corporate entity can be paid during the bankruptcy. As is quite common in bankruptcy claims adjudication, one portion of the claim is being treated as an administrative expense for distribution purposes, and the other portion is being treated as a priority claim entitled to a seventh priority for distribution purposes. Simply stated, the tax is being imposed against the single corporate entity in keeping with section 346(c)(1), but the payment of the tax imposed is being divided into separate components in accordance with the bankruptcy laws determining the priority of payment of those claims. Thus, there is nothing in either the bankruptcy or tax laws which prevents us from allowing different treatment during distribution for different portions of MDOR's claims in this case.

(*O'Neill Shoe,* at 1152).

The response suggests that the tax for the taxable year is to be computed on the gross income, deductions, exemptions, credits, etc. for the entire period; and then, the resulting tax should be somehow apportioned to pre and postpetition liability. But, how is the tax to be apportioned? "Prepetition taxable events" affect, and are affected by, postpetition taxable events in computing a single indivisible tax for the period. There exists no apparent measure for relating a portion of the tax to prepetition income, other than through bifurcating the tax period prior to determining the tax.

### If The *Shoe* Doesn't Fit. . . .

The burden is on the Debtors to show that the IRS claim, which they filed on behalf of the IRS, is properly classified and appropriately treated in their plan. The Debtors have offered no proof that the tax liability they seek to classify as a prepetition priority tax claim, is related to "prepetition taxable events" or prepetition income of the Debtors.

The claim is based on the prepetition quarterly installment payments that the Debtors were required to make during 1995, pursuant to 26 U.S.C. § 6654. The required installment payments were not tax liability. Furthermore, the IRS had no right to payment of the installments at bankruptcy filing, and never subsequently acquired a right to payment of the installments. More importantly, the amounts of the installment payments that were required under the statute were not related to income that the Debtors earned during the quarters to which they applied, or to tax on that income. The required amounts were based on 25% of the lesser of: 100% of the *previous year's* tax; or, 90% what would later be determined to be the *current year's* tax. Finally, the amounts that were ultimately determined and assigned to the first two quarters were not calculated and assigned for purposes of collecting the

installments or any tax; but were calculated and assigned for purposes of assessing interest and penalties on the installment deficiencies.

The installment payments required under 26 U.S.C. § 6654 simply have no relation to income earned during the periods to which they apply, or to tax on that income. Accordingly, the amounts required of the Debtors had no relation to prepetition income earned by the Debtors, or to any prepetition tax liability on that income; and, the failed installment payments cannot be the basis for a prepetition priority tax claim under 11 U.S.C. § 507(a)(8)(A)(iii).

How then can the Debtors relate their 1995 income tax liability to their prepetition income? It seems that the Debtors must first identify their 1995 prepetition income. Then, it seems, the Debtors must show how pre and postpetition deductions, exemptions, credits, etc., affected that income to produce a calculated portion of their 1995 income tax liability. The question, more precisely, is: how can the Debtors relate their 1995 tax liability to their prepetition income without bifurcating the tax period? Perhaps, the answer is that they cannot.

In the meantime, confirmation of their Chapter 13 plan must be denied for failure of proof regarding proper classification and treatment of the alleged IRS claim.

### III

### DISPOSITION

Based on the foregoing, it is hereby **OR-DERED** that confirmation of the Debtors' Chapter 13 plan is **DENIED**.