**In re Robert E. MARVEL, III, Debtor.**

**No. 05–62887 JPK.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

July 20, 2007.

George Galanos, Crown Point, IN, for Debtor.

Daniel L. Freeland, Sheila A. Ramacci, Daniel L. Freeland and Associates, P.C., Highland, IN, for Chapter 7 Trustee.

Henry J. Riordan, United States Department of Justice, Washington D.C., for the United States of America (Amicus Curiae).

## MEMORANDUM OF DECISION

J. PHILIP KLINGEBERGER,
Bankruptcy Judge.

This decision concerns a contested matter arising from the Motion for Turnover Order filed by David R. DuBois, as Trustee of the Chapter 7 bankruptcy estate of the debtor, on May 3, 2006, and the debtor's Objection to Motion for Turnover Order filed on May 17, 2006. The core issue is whether any portion of the debtor's federal and State of Illinois tax refunds for the tax period ended December 31, 2005 constitute property of the Chapter 7 bankruptcy estate subject to turnover to the Chapter 7 Trustee pursuant to his motion.

The Court's subject matter jurisdiction is provided by 28 U.S.C. § 1334(b), by 28 U.S.C. § 157(a) and (b), and by L.R. 200.1(a) of the Rules of the United States District Court for the Northern District of Indiana. The contested matter is a core proceeding under 28 U.S.C. § 157(b)(E).

## I. HISTORY OF PROCEEDINGS IN THE RECORD

As stated in the foregoing preamble to this decision, this contested matter arose from the Trustee's motion for turnover and the debtor's objection to that motion. Following hearings before the Court with respect to procedures to be employed to obtain final determination of the contested matter, on October 5, 2006, the Court entered its Order Concerning Further Proceedings in Contested Matter With Respect to Turnover of Pro–Rata Income Tax Refunds to the Trustee. The employment of Special Counsel by the Trustee with respect to the contested matter was approved by the Court's order entered on January 19, 2007. As was provided for by the October 5, 2006 order, the United States of America was granted leave to appear and to file a brief in the nature of an *amicus curiae* by order entered on November 8, 2006. By motion filed by the United States Trustee on November 24, 2006, that Office requested participation in the case as *amicus curiae;* by Notice filed on February 15, 2007, the United States Trustee stated that the position asserted in

briefs filed by the Trustee represented the views of the United States Trustee, and that the United States Trustee would not participate in the briefing of issues with respect to this contested matter. The Indiana Department of Revenue did not request participation in the case pursuant to the provisions for that participation stated in the Court's October 5, 2006 order. The parties before the Court are thus the debtor, the Chapter 7 Trustee as represented by Special Counsel, and the United States of America as *amicus curiae*.

Pursuant to the October 5, 2006 order, the factual record for determination of this contested matter is provided exclusively by the Agreed Material Facts filed on November 27, 2006. All parties having the opportunity to do so timely filed memoranda of law. This contested matter is now before the Court for final determination.

## II. *THE FACTUAL RECORD ESTABLISHED BY THE PARTIES*

The factual record is established solely by the Agreed Material Facts filed of record on November 26, 2006. The sole facts upon which the Court's determination will be made are stated as follows in that document:

1. That on or about May 31, 2005, Debtor filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Northern District of Indiana, Hammond Division under case number 05–62887;

2. That in 2006, Debtor timely filed Debtor's 2005 Federal & State Income Tax Returns with the appropriate Federal & State taxing authorities;

3. That as a result of said tax return filings, Debtor received Debtor's 2005 Federal & State Income Tax Refunds in 2006 in the total amount of $8,061.00;

4. That May 31, 2005, which is the date Debtor filed Debtor's voluntary Chapter 7 bankruptcy petition, is the 151st day of the year;

5. That a calendar year for the purposes of these proceedings and in calculation the pre-petition pro-rate share of the tax refunds being sought by the Chapter 7 Trustee is 365 days;

6. That a pre-petition pro-rata share of the 2005 Federal & State Income Tax Refunds is calculated by:

   a. first determining the number of days elapsed in the year of the Debtor's filing Debtor's bankruptcy from January 1 of that year to the date of the filing of the petition;

   b. divide said number; and,

   c. multiply that resulting percentage by the total amount of tax refunds received by the Debtor/Taxpayer for that tax period closing at the end of the year in which the petition for bankruptcy was filed;[1]

---

1. The Trustee's turnover motion was premised upon the traditional method utilized in the Hammond Division of the United States Bankruptcy Court for the Northern District of Indiana for calculation of the Chapter 7 bankruptcy estate's share of income tax refunds realized by the debtors for the tax period during which the bankruptcy petition was filed but which concluded following the filing of the petition. That methodology is set out in Paragraphs 4, 5, 6 and 8 of the Agreed Material Facts. The Court is uncertain of the parties' intent with respect to the last sentence of Paragraph 8 ("That in the event the Court determines that the tax refunds are assets of the bankruptcy estate, then offsets against the tax refund will be dealt with"). However, reading the parties' Agreed Materi-

7. That on or about May 31, 2005 [2] and subsequent to the filing of Debtor's 2005 Federal & State Income Tax Returns, the Chapter 7 Trustee filed a motion seeking the turnover of the pre-petition pro-rata share of Debtor's 2005 Federal & State Income Tax Refunds received by Debtor in 2006;

8. That the pre-petition pro-rata share of the 2005 Federal & State Income Tax Refunds received in 2006 and being sought by the Trustee from Debtor through Trustee's Motion for Turnover, without any set-offs, is $3,334.82; That in the event the Court determines that the tax refunds are assets of the bankruptcy estate, then offsets against the tax refund will be dealt with;

9. That Debtor is a consumer whose fiscal tax year is a calendar year which starts on January 1 and ends on December 31;

10. That Debtor timely objected to the Trustee's Motion for Turnover;

### III. ISSUE PRESENTED TO THE COURT

The issue presented to the Court in this contested matter is whether *any* portion of the debtor's federal and State of Illinois tax refunds for the annual tax period ended December 31, 2005 constitute property

al Facts as a whole, the Court deems the parties to have stipulated to the traditional mechanism for apportioning tax refunds for the year of filing of a Chapter 7 bankruptcy case, and this decision will therefore not address any issue concerning apportionment of refunds during that tax year which might otherwise be implicated by a more detailed factual analysis of the manner in which the payments made by the debtor to taxing authorities with respect to 2005 tax liabilities correlate to the pre-petition and post-petition portions of the 2005 tax year. In other words, this decision determines whether or

of the Chapter 7 bankruptcy estate, subject to administration by the Chapter 7 Trustee, and thus subject to the Trustee's motion for turnover to obtain that property for the purposes of administration of the estate.

### IV. LEGAL ANALYSIS

■ First, the Court believes that it is extremely important to acknowledge when parties in litigation before it have excelled in the presentation of matters to the Court. The Court therefore takes this opportunity to express sincere appreciation to the Chapter 7 Trustee and in particular to his Special Counsel Sheila A. Ramacci, the debtor's counsel George P. Galanos, and United States Department of Justice Attorney Henry J. Riordan for their completely professional and thorough compliance with the Court's orders establishing procedures to be employed in the determination of this contested matter, and for the quality of the work product submitted to the Court by all three of them.

Our odyssey begins, simply enough, with the concepts embodied in 11 U.S.C. § 541(a)(1) which define interests of the debtor which comprise property of the debtor's Chapter 7 bankruptcy estate. That section states the following:

(a) The commencement of a case under section 301, 302, or 303 of this title

not *any* portion of the debtor's federal and State of Illinois tax refunds comprise property of this Chapter 7 bankruptcy estate. Answering this question in the affirmative will result in the determination that the portion of the refunds constituting property of the debtor's Chapter 7 bankruptcy estate will be determined by means of the traditional pro-rata mechanism employed in this Division.

2. The Stipulation is as stated, but the motion was actually filed on May 3, 2006.

creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The crux of the issue presented by the parties is whether or not a portion of the debtor's 2005 federal and state tax refunds fall within the ambit of "all legal or equitable interests of the debtor in property as of the commencement of the case".

■ It is not the Court's intent in this decision to write the world's most scholarly tome with respect to the issues presented by the parties.[3] To begin this lesser essay, in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the United States Supreme Court was confronted with the issue of whether refunds, generated by carry-back losses suffered by a debtor in periods prior to the filing of a bankruptcy case, constituted property of that bankruptcy estate. That case, decided under the Bankruptcy Act prior to the enactment of the Bankruptcy Code in 1978, caused the Supreme Court to confront the scope of the concept of property subject to administration in a Chapter 7 case under Section 70(a)(5) of the Bankruptcy Act, a provision which lacked the definitional structure now found in 11 U.S.C. § 541. The Supreme Court adopted a two-pronged analysis in order to determine whether or not the refunds—to which the debtor only became entitled upon the filing of tax returns subsequent to the filing of the bankruptcy case, but which were generated by factual circumstances occurring prior to the filing of the case—constituted

property of the bankruptcy estate. This Court deems the most critical portion of *Segal* to be the following:

> The Segals stress in this Court that under the statutory scheme no refund could be claimed from the Government until the end of the year, but as cases already cited indicate, *postponed enjoyment does not disqualify an interest as 'property'*. (emphasis supplied).

382 U.S. 375, 86 S.Ct. 511, 515, 15 L.Ed.2d 428. One of the two prongs adopted by *Segal* for determination of the extent of property of a bankruptcy estate under the Bankruptcy Act was whether or not the debtor's interest in the property at issue was "sufficiently rooted" in circumstances which occurred prior to the date of filing of the petition. Much has been written about whether the enactment of 11 U.S.C. § 541(a)(1) adopted this prong of *Segal*, or whether that enactment implicitly overruled that case in this context. For whatever it is worth, the Legislative history of § 541 specifically notes: "the result of [*Segal v. Rochelle*], is followed, and the right to a refund is property of the estate"; *In re Burgess*, 438 F.3d 493, 498, fn. 6 (5th Cir.2006). This Court disagrees with the analysis of the United States Court of Appeals for the Fifth Circuit in *Burgess*, and deems there to be no inconsistency between 11 U.S.C. § 541 and *Segal's* "sufficiently rooted" prong: the definitional structure of "property of the estate" in § 541 essentially mirrors the examples provided in *Segal* of property which should not be considered for inclusion in the estate because the debtor's *entire* lack of an interest in that property as of the date of

---

**3.** If one were inclined to attempt to do so, one could not improve upon the analysis of the Honorable Leif M. Clark in *In re Donnell*, 357 B.R. 386 (Bankr.W.D.Tex.2006)—an analysis which the Court neither adopts nor disavows, but rather commends to anyone who reads this decision as the ultimate scholarly analysis of the issues before the Court.

the petition did not merit that inclusion.[4] Thus, *Segal's* "rooted" in the pre-petition past prong provides guidance for deciding the issue at hand.

The United States Court of Appeals for the Seventh Circuit has had occasion to comment on the scope of "property of the estate" under § 541(a)(1). In *Matter of Yonikus,* 996 F.2d 866, 869 (7th Cir.1993), the Court stated:

> When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate. Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include all of the debtor's interests, legal and equitable. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05 and nn. 8, 9, 103 S.Ct. 2309, 2313 and nn. 8, 9, 76 L.Ed.2d 515 (1983). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent *or because enjoyment must be postponed."* *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966) (bankruptcy estate includes right to refund).[FN3] A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate. *See In re Neuton,* 922 F.2d 1379, 1382–83 (9th Cir.1990) (collecting cases). *In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.* *In re Anderson,* 128 B.R. 850, 853 (D.R.I.1991) (citations omitted).

FN3. Although the *Segal* ruling was made under the Bankruptcy Act rather than the Code, the legislative history specifies that its holding is applicable under the Code. S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in*

1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 595, 95th Cong., 2d Sess. 367, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323.

The question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Matter of Jones,* 768 F.2d 923, 927 (7th Cir.1985). (emphasis supplied).

While the extent of an interest of a Chapter 7 debtor in a state tax refund may revolve in part upon principles of state law, when federal law provides a general framework of inclusion, only a specific state law of exclusion will remove property from the general federal sphere of influence. *See, Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In addition, federal interests require the application of federal law with respect to the analysis concerning federal tax refunds, and thus the nature and existence of rights in a federal tax refund are determined by federal law; *In re Martin,* 167 B.R. 609, 612 (Bankr.D.Or.1994). Finally, the concept of "property of the estate" under 11 U.S.C. § 541(a)(1) is extraordinarily broad, and encompasses all interests of the debtor—whether determined under state or federal law as the circumstances dictate—existing as of the date of the filing of the bankruptcy petition; *See, In re Quality Health Care,* 215 B.R. 543, 560–561 (Bankr.N.D.Ind.1997).

Thus, further refined, the critical issue to be determined in this contested matter is the extent to which the debtor had any interest in property within the scope of 11

4. See, for example, *Segal's* analysis of postpetition earnings; 382 U.S. 375, 86 S.Ct. 511,

515, 15 L.Ed.2d 428, essentially mirrored by 11 U.S.C. § 541(a)(1).

U.S.C. § 541(a)(1), cognizable as a property interest under state or federal law, in any portion of the 2005 tax refunds as of the date of the filing of his Chapter 7 petition. The Court determines that he did.

Let's first distinguish the primary cases upon which the debtor relies, *In re Bracewell,* 454 F.3d 1234 (11th Cir.2006), *In re Burgess,* 438 F.3d 493 (5th Cir.2006), and *In re Vote,* 276 F.3d 1024 (8th Cir.2002). The issue confronted in these three cases is essentially the same. In each case, the debtors were farmers who had experienced significant crop losses during the year of filing of bankruptcy, particularly in the period prior to the date of the petition in the context of being unable to plant a viable crop. These losses were "choate" (i.e., all of the requisite losses had occurred) prior to the petition filing date. *Subsequent to* each of the debtor's filing of bankruptcy in each of those cases, Congress passed legislation which provided compensation to an entity in the debtor's position for the crop losses experienced during the year of filing. The Chapter 7 Trustee in each debtor's case sought to obtain the "disaster" payments for the benefit of the estate by means essentially of the argument that all of the facts which gave rise to the claim for losses occurred prior to the petition date, an argument premised on the "rooted" in the past prong of *Segal, supra.* In each of these cases, the respective Circuit Court of Appeals determined that *on the date of the petition*—although there was speculation that Congress would provide disaster relief by means of the legislation ultimately enacted—the debtor had no legal right to anything; that the legislation giving rise to the debtor's ability to obtain disaster relief was enacted post-petition; and that the disaster payments did not constitute property of the bankruptcy estate. Thus, *on the date of the filing of the petition there was no law*—either statutory or otherwise—which provided the debtor with any possible "legal or equitable" interest in the payments which were received as a result of the post-petition legislation. Additionally, the source of the payments under the federal disaster program was not funds provided by the debtor from property in which the debtor had an interest, i.e., withheld wages or direct tax payments by the debtor. Thus, if one were to utilize *Segal's* reachback "rooted" analysis, neither the seed nor the harvest had any association with property interests possessed by the debtors prior to their filing of bankruptcy cases. Contrast that to the case at issue. In this case, the debtor's *potential ability* to ultimately obtain a refund—from funds provided by the debtor himself—was statutorily provided for on the date the debtor filed his petition; only his enjoyment of his interest in the refund was postponed by the statutory framework.

The facts in this case—as stated by the parties in their stipulation—do not indicate whether the source of the tax refunds was payments made directly by the debtor to the taxing authority, or was payments made on behalf of the debtor by the debtor's employer by means of withheld wages to pay taxes. Whatever the source of payments made during a tax year in anticipation of that year's tax liabilities is, remitted advance payments concerning potential tax liabilities are held essentially in suspense by the taxing authority pending the taxpayer's filing of a return for the year with respect to which the tax payments were remitted. If the return ultimately filed by the taxpayer discloses that he/she owes as much or more than the amount of remitted payments, those payments are then applied to the tax liabilities determined by the taxing authority. If the return for the year in question ultimately establishes that the taxpayer has overpaid

taxes by means of remitted payments, then upon the taxing authority's determination of that fact, if the return was timely filed to claim a refund, the taxpayer is *then* entitled to a refund of the amounts remitted by or on behalf of the taxpayer to the taxing authority in excess of those necessary to satisfy the taxpayer's obligation to the taxing authority.

The issue is further distilled to this: between the time that payments are remitted to the taxing authority and the time that the taxpayer's liability is finally determined by the taxing authority, what is the property interest of the taxpayer in the remitted payments?

It is conceptually helpful, and valid, to view the transfer of withheld income taxes by an employer to a taxing authority to be in essence a statutorily required assignment by a taxpayer to the taxing authority of that portion of the wages to be paid otherwise to the taxpayer designated by the taxpayer to be contemplated to be necessary to satisfy the taxpayer's tax liability for a particular tax period with respect to federal income tax; 26 U.S.C. § 3402(a)(1) requires an employer to deduct and withhold from wages due an employee an amount, as essentially an advance payment of tax, determined in accordance with procedures prescribed by the Secretary of the Treasury. Individual taxpayers who are not subject to withholding are required to pay estimated tax payments; these payments are deemed to be "payment on account of the income taxes imposed ... for the taxable year" for which the payments are made; 26 U.S.C. § 6315. Withheld taxes are allowed to the employee with respect to whom the income was withheld as "a credit against the tax imposed [by the Internal Revenue Code]"; 26 U.S.C. § 31(a). However, the payment of taxes is actually due at the time and place des-

ignated by the Internal Revenue Code for filing of the tax returns for the year for which taxes are owed; 26 U.S.C. § 6151(a). The time for filing the return for a calendar year taxpayer is the 15th day of April of the year following the close of the calendar tax year; 26 U.S.C. § 6072(a). Thus, taxes are due and owing, and constitute a liability, as of the due date of the tax return for the tax period with respect to which advance payments of tax were made; *Federal Deposit Insurance Corp. v. United States,* 654 F.Supp. 794, 806–807 (N.D.Ga.1986). As the foregoing federal statutory framework provides, advance payments of taxes—either by means of estimated payments by the taxpayer or by means of withholding—do not *finally* "vest" in the taxing authority as taxes until the due date of the return, and the taxpayer retains a "legal or equitable" interest in these payments, in some form, until that date. The parties have presented nothing to the Court to even suggest—let alone establish—that the State of Illinois' income tax framework departs from this conceptual analysis. The actual amount of the taxpayer's "retained" interest—realizable through a tax refund—is determined by the taxing authority's assessment/refund procedure. Similarly, direct payments (e.g., estimated tax payments) are made in anticipation of the taxpayer's estimate of the amount necessary to satisfy tax liabilities for the tax year for which the payments are made. Rather than immediately divesting the taxpayer of any interest in these advance tax payments, these payments constitute credits for the benefit of the taxpayer until the final determination of the taxpayer's tax liability for the year with respect to which those payments were remitted. The mere remission of anticipated tax payments to a taxing authority does not divest the taxpayer of all "legal or equita-

ble" interest in those payments. Thus, although a taxpayer's ability to obtain a refund of taxes is dependent upon filing a tax return, the taxpayer's interest in the remitted funds is not completely divested until final determination of the governmental entity's interest in the remitted fund. Upon the determination of a refund due to overpayment, the taxpayer's postponed enjoyment of the use of funds in which he retained an interest is actualized.

■ The right of a taxpayer to receive a tax refund, dependent as it is upon a determination of the taxpayer's liability for the tax year for which payments have been made to the taxing authority, *has nothing to do with* the interests of the debtor under 11 U.S.C. § 541(a)(1) in tax payments made to the taxing authority in advance of the final determination of the debtor's ultimate liability for taxes for that year. The debtor's contentions confuse an "interest of the debtor in property" with the concept of immediate control and use of property. As stated in *Segal, supra.,* and *Yonikus, supra.,* the postponement of use does not negate the debtor's "interest". As a result, any payments made by the debtor, or on behalf of the debtor by means of income tax withholding, for the income tax period in which the debtor's Chapter 7 bankruptcy case is filed retain their characteristic as a "legal or equitable interest of the debtor in property as of the commencement of the case" with respect to the period preceding the filing of the debtor's bankruptcy petition.

The bottom line is that the remission of advance income tax payments to the Unit-ed States of America, Internal Revenue Service, or to the Illinois Department of Revenue, in anticipation of tax liabilities owed for the year with respect to which those payments are made does not by the act of remission divest the debtor of all property interests in those payments under 11 U.S.C. § 541(a)(1). The debtor/taxpayer retains interests in the "deposit account" paid to the taxing authority. The fact that the debtor cannot realize the actualization of a tax refund until the filing of a return claiming that refund does not change the fact that the debtor retains an interest in remitted tax payments on the date of the filing of the petition; *See, In re Michaelson,* 200 B.R. 862 (Bankr.Minn. 1996).

The Court thus determines that the debtor's interest *on the date of the petition* in funds held by a taxing authority result-ing from payments made by or on behalf of the debtor with respect to tax liabilities for the annual tax period during which the debtor filed a Chapter 7 bankruptcy petition constitute property of the Chapter 7 debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1). In this case, the parties have stipulated that the mechanism for determining the extent of the debtor's pre-petition interest in the refunds is the traditional "pro-rata" methodology employed in this Division. It is therefore unnecessary for the Court to address the much more complicated concept of how much of the remitted tax payments are actually attributable to the pre-petition period in terms of any refund ultimately granted to the taxpayer.[5]

The determination made by the Court, in consonance with the parties' stipulation,

---

**5.** In a very prescient comment, on page 11 of its brief, the United States of America has opined that the "pro-rata" mechanism stipulated to by the parties in this case is "fair and just, and consistent with *Segal,* because the taxes appear to have been withheld at the same rate throughout the taxable year". The import of the government's comment is not lost on the Court; *See, In re Christie,* 233 B.R. 110 (10th Cir. BAP 1999) [denying recovery by the Trustee in circumstances in which all payments on taxes for the year of filing were made after the date of the filing of the petition]; *See also, In re Donnell,* 357 B.R. 386,

is in accord with nearly every case which has decided the issue presented by the debtor's objection; *In re Barowsky*, 946 F.2d 1516 (10th Cir.1991); *In re Rash*, 22 B.R. 323 (Bankr.Kan.1982); *In re Doan*, 672 F.2d 831 (11th Cir.1982); *In re Dussing*, 205 B.R. 332 (Bankr.M.D.Fla.1996); *In re Orndoff*, 100 B.R. 516 (Bankr. E.D.Cal.1989); *See, In re Whitmer*, 228 B.R. 841 (Bankr.W.D.Va.1998) [earned income credit]; *See, In re Griffin*, 339 B.R. 900 (Bankr.E.D.Ky.2006) [child tax credit].

The debtor retained an interest in funds deposited prior to May 31, 2005 with the Internal Revenue Service and with the Illinois Department of Revenue with respect to the debtor's anticipated tax liabilities to those taxing authorities with respect to the annual tax period ended December 31, 2005 on the date of his filing of his petition on May 31, 2005. That retained interest in tax deposits constituted property of the debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1). The parties have stipulated that the extent of the debtor's interest in those deposits is accurately determined by the pro-ration formula traditionally employed in the Hammond Division of the United States Bankruptcy Court for the Northern District of Indiana, i.e., by pro-ration of the amount of the total tax refund received by the debtor with respect to 2005 to the pre-petition period, by dividing the number of days from January 1, 2005 to May 31, 2005 by 365, and then applying that fraction to the debtor's total federal and state refunds for the 2005 tax year.

supra. See, In re Verill, *17 B.R. 652 (Bankr. Md.1982) [presumption of pro-rata calculation made by the Bankruptcy Act].*

6. Paragraph 8 of the parties' Agreed Material Facts states that in the event the Court determines that the pro-rated amount of tax refunds are assets of the bankruptcy estate, "then offsets against the tax refund will be dealt with". The Court has been confronted

Based upon the foregoing, the Court determines that the debtor's objection to the Trustee's motion for turnover is denied. The Court further determines that the Trustee's motion for turnover is granted.[6]

IT IS ORDERED, ADJUDGED AND DECREED that the debtor's objection to the Trustee's Motion for Turnover Order filed on May 3, 2006 is denied, and that said motion by the Trustee is granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the debtor shall turnover to David R. DuBois, as the Chapter 7 Trustee in the debtor's bankruptcy case number 05–62887, the amount of $3,334.82 within 60 days of the date of entry of this order.

in this case with a contested matter by which the Trustee has demanded a definite amount of $3,334.82 as the estate's pro-rated share of federal and state refunds, and the debtor's objection to that motion. Whatever the nebulous reference to "offsets against the tax refund will be dealt with" means, the turnover motion on its face requests turnover of $3,334.82.