In the Matter of Charles W. Wolverton, fdba Wolco Stations and Wolverton Oil Company, Bankrupt No. 78006.

**TIME OIL COMPANY, Appellant,**

v.

**Charles W. WOLVERTON, and Wolverton Oil Company, Appellees.**

No. 71–2273.

United States Court of Appeals, Ninth Circuit.

Jan. 3, 1974.

Rehearing Denied March 12, 1974.

Bernard Petrie (argued), San Francisco, Cal., for appellant.

William E. Anderson, Jr. (argued), William I. Cohen, Palo Alto, Cal., Daniel Aronson, Jr., of Anixter & Aronson, Burlingame, Cal., for appellees.

Before HAMLIN, KOELSCH and ELY, Circuit Judges.

## OPINION

HAMLIN, Circuit Judge:

This bankruptcy appeal comes before us in an unusual posture. All of the bankrupt's creditors have been paid 100 cents on the dollar. A creditor, however, appeals from the denial by the United States District Court for the Northern District of California of a petition to review the Referee in Bankruptcy's decision denying its claim upon surplus monies remaining in the bankrupt's estate.[1]

The issue herein presented, characterized by the district court as one of first impression, was succinctly summarized by the referee:

"A preferential transfer is made to secure an antecedent debt. The transferee, being unable to return the property, pays its value to the trustee. Later, all allowed claims properly filed are paid. A surplus exists.

"May a creditor receive from a bankruptcy estate not only the amount of his debt, but the value of the property the bankrupt has given him to secure the debt?"

The referee concluded that the creditor was limited to receiving from the bankrupt's estate only the amount of the debt. The district court agreed. We affirm.

## FACTS

The bankrupt, appellee herein, doing business as Wolverton Oil Company and Wolco Stations, operated a retail gasoline service station in Sunnyvale, Santa Clara County, California. On February 7, 1964, he was indebted to his supplier, Time Oil Company (Time), appellant herein, for the purchase of petroleum products in the amount of $22,560.33. On that date, the bankrupt assigned and transferred to Time, as security for said indebtedness and consideration for future consignments of gasoline, the following: (1) the leasehold on the above noted Sunnyvale service station, said lease having two years remaining on its original term, plus two renewal options for five years each, (2) the sum of $3,600, which had been deposited with the lessor as prepaid rent, and (3) improvements which the bankrupt had constructed and installed upon the premises covered by the lease.

The value of the leasehold assigned and transferred, including the amount of the prepaid rent, but excluding the value of the improvements, as found by the referee, was the sum of $36,000.00.

In April, 1964, within four months after·the assignment and transfer noted above, the bankrupt filed a voluntary Petition in Bankruptcy, and was adjudicated a bankrupt. Subsequent to April, 1964, Time used up the prepaid rent on the property which had been assigned to it to secure the debt owed by the bankrupt, and failed to exercise the option to renew the aforementioned lease. In late 1966, Time abandoned the property, returning to the landlord its rights, title and interest therein.

---

1. The question for review was initially indirectly presented by the bankrupt's petition to release certain monies held in trust. The Referee in Bankruptcy ordered the monies released on February 5, 1971. Appellant Time Oil Company's Petition for Review from this order was denied by the district court on July 15, 1971, and this appeal was taken therefrom.

Thereafter, on September 11, 1972, the Referee entered an order sustaining the trustee's objection to appellant Time Oil Company's proof of claim for the sum of $45,308.08.

By agreement and stipulation of both parties, this appeal is deemed to include an appeal by appellant Time Oil Company from the Referee's order of September 11, 1972, without the necessity for appellant to petition the district court for review.

The relevant facts and issues are identical to both appeals.

In April, 1966, the trustee brought a preference action against Time for recovery of the property assigned and transferred to it in February, 1964, or its value. After a trial held in July, 1968, the referee found that the assignment and transfer constituted a voidable preference as defined in section 60 of the Bankruptcy Act (hereinafter the Act), 11 U.S.C. § 96.[2] The referee further found that Time had converted the assigned leasehold by failing to exercise the option to renew.

Upon the referee's finding of the voidable preference, it became incumbent upon Time to return the object of that preference, the leasehold, to the bankrupt's estate. Section 60(b) of the Act, 11 U.S.C. § 96(b). However, Time could not return that which it had converted and, in lieu thereof, the referee ordered Time to pay into the bankrupt's estate the leasehold's value, plus interest, a total sum of $45,308.08. The referee had ascertained this exact value largely upon the basis of the value of the five-year renewal option periods.

In March, 1969, the referee entered a judgment awarding the $45,308.08 to the trustee, payable to him by Time.

A Petition for Review was filed by Time from this judgment. The United States District Court for the Northern District of California (Harris, J.) denied the petition, and also denied a concurrently filed Motion for Relief from said judgment under section 60(b) of the Federal Rules of Civil Procedure. No appeal was taken by appellant from these orders and they became final. Thereafter, the trustee duly recovered from Time the $45,308.08 in payment of the judgment entered by the referee.

Acting for himself, and prior to the issuance of the preference order and judgment, the bankrupt had secured a new lease on the very property it had previously assigned and transferred to Time. The bankrupt took possession of the property in January, 1967, under a new five-year lease, with a five-year renewal option. Apparently, the operation of the service station under this new lease was profitable.

In the meantime, in March, 1965, the bankrupt had purchased from the trustee cause of actions for violations of the antitrust laws by the major oil companies. That sale, however, was consummated without notice to the creditors. The United States District Court for the Northern District of California (Zirpoli, J.) therefore set aside the order confirming said sale, and this court affirmed. Wolverton v. Shell Oil Company, 442 F.2d 666 (9 Cir. 1971.)[3] The result was to cast into the bankrupt's estate in excess of $150,000 in settlement proceeds. These funds created a substantial surplus in the bankruptcy estate.

In November, 1971, the referee entered his order directing the trustee to pay in full all properly filed claims, and to distribute a notice of additional time in which to file claims not previously filed.

Time then filed a claim for $45,308.08, the amount of the preference judgment it had been ordered by the referee to pay to the trustee and refiled its claim of $22,560.33.[4]

2. Section 60(a)(1), 11 U.S.C. § 96(a)(1), defines a 'preference' as (1) a transfer of any property of the debtor, (2) to or for the benefit of the creditor, (3) for or on account of an antecedent debt, (4) while the debtor is insolvent, (5) within four months of bankruptcy, (6) which enables the creditor to obtain a greater percentage of his debt than some other creditor of the same class. Section 60b [11 U.S.C. § 96(b)] permits the trustee to avoid a preference if the creditor had reasonable cause to believe that the debtor was insolvent at the time of the transfer." DuBay v. Williams, 417 F.2d 1277, 1286 (9 Cir. 1969).

3. In affirming Judge Zirpoli's order setting aside the sale from the trustee to the bankrupt, we stated:
"* * * a sale to the bankrupt, especially when it is of an asset such as a cause of action of unknown but potentially great value, as here, offers opportunity for skulduggery that make it suspect. * * * Such a sale, when conducted with the total informality that appears here, ought not to stand." 442 F.2d at 669.

4. Reference is made to Wolverton v. Shell Oil Company, 442 F.2d 666 (9 Cir. 1971) for further details.

The original indebtedness owed by the bankrupt to Time, $22,560.33, was paid in full. But the referee, sustaining the trustee's objection, held that Time's sole legitimate claim was limited to this amount, i. e., the amount owed before the preferential transfer, and that Time was not entitled to recover both the amount of said debt and the value of the property given by the bankrupt to secure this indebtedness.

The issue for review is properly before us on appeal.[5]

## DISCUSSION

Consideration of Time's arguments for reversal is prefaced by our identifying and separating the three aforementioned orders resulting in review.

We first noted the order and judgment in the preference action against Time, in favor of the Trustee in Bankruptcy (hereinafter preference order). The referee, after a trial, concluded that Time had converted the security it received for the indebtedness (the service station leasehold), and ordered Time to reimburse the bankrupt estate at the value thereof ascertained by the referee. Judge Harris affirmed this order, and Time took no appeal therefrom. The order is therefore final.

We also noted the order holding that Time had no interest in the excess estate monies beyond the sum of the indebtedness owed by the bankrupt. That order was also affirmed by Judge Harris, and is the subject of this appeal.

The other order, confirming the antitrust sale, reversed by Judge Zirpoli who was in turn affirmed by this court in Wolverton v. Shell Oil Company, *supra*, is of mere historical significance here.

Because Time did not appeal the preference order, we must accept it at face value. That order set aside a preference pursuant to section 60(b) of the Act.

The preference consisted not of a payment, but rather of security. This is a distinction without a difference, however, because a transfer set aside pursuant to section 60(b) of the Act includes the creation of a security interest. Section 1(30) of the Act, 11 U.S.C. § 1(30).

Explicit in the preference order is the finding that the secured property could not be recovered, inasmuch as it consisted of a leasehold which the referee found Time had converted. Section 60(b) of the Act specifically provides that, if the secured property has been converted, the trustee is entitled "[to] recover * * * its value * * * ." See California Mercury Record Distributors, Inc. v. Phelps, 283 F.2d 261 (9 Cir. 1960). Accordingly, the referee ascertained the value of the leasehold, plus interest, a total sum of $45,308.08. His judgment in favor of the trustee and against Time for that sum was consistent with the relevant Bankruptcy Act provisions.

Time, having disgorged its preference by payment of the above noted figure, was then in a position to recover the outstanding debt owed to it by the bankrupt, the sum of $22,560.33. See section 57(g) of the Act, 11 U.S.C. § 93(g); Katchen v. Landy, 382 U.S. 323, 330, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

Time's contention that it is entitled to not only the amount of the debt owed prior to the preferential transfer, but also to the value of the converted property received from the bankrupt as security for said debt is predicated entirely upon equitable considerations.

Working from the premise that there now exists a substantial surplus in the bankruptcy estate, Time contends that to permit the bankrupt to retain the $45,308.08 it recovered for Time's conversion of the service station leasehold, when the bankrupt has independently acquired a new lease on those very same premises, would result in an inequitable windfall for the latter.

---

5. *See* note 1, *supra*.

Collier states that "(t)he whole purpose of the bankruptcy system is to make the bankrupt's property available to his creditor and to give back any surplus to him." 3A Collier on Bankruptcy ¶ 66.03 at 2327, n. 8 (14th ed. 1971). Accordingly, the case law indicates the general rule to be that surplus monies held by the trustee pass and return to the bankrupt after payment of all properly filed claims and costs of administration. *See, e. g.,* Hendrie v. Lowmaster, 152 F.2d 83, 85 (6 Cir. 1945); Wheeling Structural Steel Co. v. Moss, 62 F.2d 37, 40 (4 Cir. 1932); Berl v. Crutcher, 60 F.2d 440, 444 (5 Cir. 1932), cert. denied 287 U.S. 670, 53 S.Ct. 314, 77 L.Ed. 578 (1933); In re Silk, 55 F.2d 917, 918 (2 Cir. 1932); Johnson v. Norris, 190 F. 459, 462 (5 Cir. 1911), cert. denied 232 U.S. 723, 34 S.Ct. 479, 58 L.Ed. 815 (1914). *See generally,* 6 Remington, Bankruptcy Law, § 2890 (5th ed. 1952).

■ We recognize, of course, that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). *See also* Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939). *See generally,* 1 Collier, *supra,* at § 2.09. Indeed, the above noted general rule regarding distribution of surplus estate funds is based on just such principles of equity. *See,* 6 Remington, *supra.* Hence, there exists a corollary to that rule which recognizes that exceptional considerations of equity may dictate that surplusage pass to one other than the bankrupt. *E. g.,* In re Lenox, 2 F.2d 92 (W.D.Pa.1924).[6] *See,* In re Goss, 43 F.2d 746 (W.D.Ga.1930).

■ Time stands before this court having obtained a preference of the bankrupt's leasehold interest while having reasonable cause to believe that the

bankrupt was insolvent. This leasehold interest has been found by the referee to be worth $45,308.08, including interest. Time converted this property and was ordered to return its value to the bankrupt's estate.

■ Time's standing as a converter is the product of a final order which may not now be collaterally attacked. *See* Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Neither can the referee's assessment of the converted property's value be herein challenged. *Id.*[7]

■ There exists an equitable doctrine which states that " 'he who comes into equity must come with clean hands.' " Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). *See also,* Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244–245, 54 S.Ct. 146, 78 L.Ed. 293 (1933). It would be anomalous for this court to invoke equitable principles to allow a converter of security to recover payments for losses attributable to his own actions.

■ "The issuance of equity relief is a matter of discretion." Berman v. Narragansett Racing Association, 48 F. R.D. 333, 336 (D.R.I.1969). *Precision Instrument Mfg. Co., supra,* 324 U.S. at 815, 65 S.Ct. 993. The scope of our review is accordingly limited to a determination of whether there was an abuse of said discretion by either the referee or the district court. Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9 Cir. 1942); Borchard v. California Bank, 107 F.2d 96, 98 (9 Cir. 1940), rev'd on other grounds, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222 (1940). *See* Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (Burger, C. J.). *Cf.* PPG Industries, Inc. v. Continental Oil Co., 478 F.2d 674, 682 (5 Cir. 1973); Broadview Chemical Corp. v.

6. *But see* Burton Coal Co. v. Franklin Coal Co., 67 F.2d 796, 799 (8 Cir. 1933).

7. Counsel responsible for prosecution of this appeal did not represent appellant during

pendency of the "preference" litigation. At oral argument, he was unable to explain Time's failure to take an appeal from the preference order and judgment.

Loctite Corp., 417 F.2d 998, 1000 (2 Cir. 1969), cert. denied, 397 U.S. 1064, 90 S. Ct. 1502, 25 L.Ed.2d 686 (1970). On the facts of this case, we are unable to so conclude.

Therefore, the district court's order denying appellant's Petition for Review, and the referree's order sustaining the trustee's objection to appellant's proof of claim, must both be

Affirmed.

KOELSCH, Circuit Judge (dissenting):

This court pays lip service to the undoubted proposition that courts of bankruptcy are essentially courts of equity, and after doing so, applies dry legal principles to selected facts and summarily proceeds to decision.[1] Such treatment effectively "pulls the curtain" upon much that in conscience would and should be considered in arriving at an equitable conclusion; as a result, Wolverton, the erstwhile bankrupt, is allowed to both eat his cake and have it too.

As I read the opinion, the sole basis for the court's conclusion is that Time was a "converter" of Wolverton's property.[2] We are told that "[i]t would be anomalous for this court to allow a converter of security to recover payments for losses attributable to his own actions." However true that pronouncement might be in a dispute governed by legal principles, it should not be given currency in one tested by considerations of fairness. Wolverton has suffered no losses. To the contrary, he was able to, and in fact did, regain possession of the same property which he now has under a new lease on better terms than the old one. Moreover, by securing the new lease, Wolverton effectively foreclosed Time from recovering the property itself and being able to turn it back to Wolverton.[3]

Time has compensated Wolverton's trustee for the value of the property it

---

[1]. As succinctly said by the Fifth Circuit in Johnson v. Norris, a case cited by this court in its opinion, "A court of bankruptcy is a court of equity seeking to administer the law according to its spirit and not merely by its letter."

[2]. The conversion occurred when Time failed to renew the lease which Wolverton had assigned to Time as security and allowed the property to revert to the lessor.

The purpose of the reminder that "Time stands before this court having obtained a preference of the bankrupt's leasehold interest while having reasonable cause to believe that the bankrupt was insolvent" is not clear to me. The dispute here, of course, is not between the trustee and Time but between Time and Wolverton. The fact that Time was the recipient of a preferential transfer (from Wolverton) should not serve to put Time in a "bad light." There does exist a tendency to lose sight of the fundamental differences that exist between preferential and fraudulent transfers and indiscriminately to regard the recipients of both types of transfers as cheats or worse: ". . . the underlying theories of preferences and fraudulent conveyances are occasionally forgotten and the transactions so prohibited are accordingly confused.

. . . There are however, certain clear distinctions between the two types of prohibited transactions which should be borne in mind constantly. First, of all, it must be remembered that aside from legislative restrictions . . . a preference may be a perfectly valid and legitimate business transaction. On the other hand a fraudulent conveyance of transfer aside from statutory interdiction, is almost always invalid. There is no element of moral turpitude connected with the giving (or receipt) of a mere preference; . . . ." 3 Collier on Bankruptcy (14 ed.), Sec. 60.03, p. 763–4.

[3]. In this regard, attention should also be directed, if equitable treatment is to be granted Time, to the strange sequence of events ensuing Wolverton's transfer of the property to Time. Section 60(b) of the Act provides that "the trustee may recover the property, or, if it has been converted, its value." The alternative is not available absent a conversion. After Wolverton went into voluntary bankruptcy, Wolverton's trustee made no effort to reclaim the property while it remained in Time's possession. Had he done so, then, of course, he would have lost it to the lessor; for, as the referee found, "at no time prior to the expiration of the initial term of the Sunnyvale lease was there suffi-

converted. Wolverton now enjoys that property and is not "out of pocket"; indeed, he has profited as a consequence of the conversion. Time is entitled to a return of its money. I would reverse and remand with appropriate directions.

cient cash to perform the conditions and obligations of the lease."

Instead, the trustee waited until the "conversion" occurred and then engaged the bankrupt's personal attorney as special counsel for the purpose of conducting the preference action. The question arises as to the bona fides of the arrangement, for, as the Supreme Court noted in Pepper v. Litton, 308 U.S. 295, 299, n. 4, 60 S.Ct. 238, 242, 84 L.Ed. 281 (1939):

"On the professional ethics of the conduct of Quillen, the District Court aptly observed: 'It is generally accepted that an attorney for the bankrupt should not be chosen attorney for the trustee in any case.'"