IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

JANE HM DOE, A MARRIED WOMAN,
*Plaintiff/Appellant*,

*v.*

THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF PHOENIX, A
CORPORATION SOLE; THE SOCIETY OF THE DIVINE SAVIOR USA PROVINCE AKA
SOCIETY OF THE DIVINE SAVIOR, A WISCONSIN CORPORATION; ST. MARK
ROMAN CATHOLIC PARISH PHOENIX, AN ARIZONA CORPORATION,
*Defendants/Appellees*.

No. 2 CA-CV 2022-0080
Filed February 3, 2023

---

Appeal from the Superior Court in Maricopa County
No. CV2020001936
The Honorable Joan M. Sinclair, Judge
The Honorable Andrew J. Russell, Judge

**VACATED AND REMANDED**

---

COUNSEL

Ahwatukee Legal Office P.C., Phoenix
By David L. Abney
*Counsel for Plaintiff/Appellant*

Lewis Roca Rothgerber Christie LLP, Phoenix
By John Gray and Nicholas Scott Bauman

and

Coppersmith Brockelman PLC, Phoenix
By John C. Kelly
*Counsel for Defendants/Appellees The Roman Catholic Church of the Diocese of
Phoenix and St. Mark Roman Catholic Parish Phoenix*

Thorpe Shwer P.C., Phoenix
By William L. Thorpe and Mitchell W. Fleischmann

and

Laffey, Leitner and Goode LLC, Milwaukee, Wisconsin
By John J. Laffey and Allison E. Laffey
*Counsel for Defendant/Appellee The Society of the Divine Savior USA Province*

---

**OPINION**

---

Presiding Judge Eppich authored the opinion of the Court, in which Vice Chief Judge Staring concurred and Judge Brearcliffe dissented.

---

E P P I C H, Presiding Judge:

**¶1**　　　Jane HM Doe appeals from the trial court's judgment dismissing her complaint against the Roman Catholic Church of the Diocese of Phoenix, the Society of the Divine Savior USA Province ("the Salvatorians"), and St. Mark Roman Catholic Parish Phoenix (collectively "Defendants"), and denying her post-dismissal motions. She contends the court erred in concluding she lacked standing to pursue her tort claims against the Defendants because she had filed for bankruptcy. Because Doe has standing to pursue her claims, we vacate the judgment and remand for further proceedings consistent with this opinion.

**Factual and Procedural Background**

**¶2**　　　In reviewing a trial court's dismissal of a complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., we take as true the well-pled facts alleged in Doe's complaint. *See Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, n.1 (2021); *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7 (2008). Doe alleged that, in the late 1970s or early 1980s, she had attended St. Mark Roman Catholic Parish in the Diocese of Phoenix. During this time, the Defendants employed two Roman Catholic clerics, Father Donald Verhagen and Father James Bretl. Doe alleged that, when she was less than fifteen years old, Verhagen and Bretl had engaged in sexual conduct with her.

**¶3**　　　Doe further alleged that Defendants had offered youth programs, at which Verhagen and Bretl both worked with children in

positions of trust, as part of their employment by the Defendants. She also alleged that the Defendants had engaged in a practice of transferring clergy throughout the country in an attempt to cover up sexual misconduct, and at the time of Verhagen's and Bretl's employment, the Defendants knew, or should have known, that the two clerics had previously engaged in sexual misconduct with minors and were unfit to work with children.

¶4        Doe's claims, which were governed by a two-year limitations period, accrued in 1990 when she turned eighteen, and the statute of limitations initially expired in 1992. *See* A.R.S. §§ 12-502 (if action accrues while person is a minor, statute of limitations begins to run after person turns eighteen); 12-542(1) (two-year statute of limitations for personal injury claims); *see also Floyd v. Donahue*, 186 Ariz. 409, 411-12, 414 (App. 1996) (two-year statute of limitations applied to personal injury claims stemming from sexual abuse occurring from 1970 to 1992). In 1993 and 2004, Doe filed for Chapter 7 bankruptcy in New York, and her debts were discharged. She did not disclose her tort claims against the Defendants in her bankruptcy filings.

¶5        In 2019, the Arizona legislature passed House Bill 2466, which revised the statute of limitations. 2019 Ariz. Sess. Laws, ch. 259, § 1. As codified in part at A.R.S. § 12-514, a twelve-year statute of limitations now applies for injuries suffered as a result of sexual contact or sexual conduct against a minor. The bill also provided that a cause of action that would nonetheless be time-barred by § 12-514 was permitted to be revived so long as it was brought before December 31, 2020. 2019 Ariz. Sess. Laws, ch. 259, § 3(B) (hereinafter the "revived statute of limitations"). On February 10, 2020, Doe sued the Defendants alleging sexual assault, sexual abuse, sexual conduct with a minor; negligence; negligent training and supervision of employees; negligent retention of employees; breach of fiduciary duty; intentional infliction of emotional distress; endangerment; child abuse; and assault.

¶6        The Defendants moved to dismiss. The trial court granted the motions, concluding that although Doe had adequately pled vicarious liability and qualified for the revived statute of limitations, she lacked standing because the claims are the property of her bankruptcy estate.[1] Doe

---

[1]For ease of reference, we refer to Doe's 1993 and 2004 bankruptcies as one "estate," both having the same consequence to the litigation here.

then filed various motions challenging that ruling, which the court denied, and, after entry of final judgment, this timely appeal followed.

## Jurisdiction

¶7            The Defendants contend our court lacks jurisdiction over Doe's appeal. We have an independent obligation to determine whether we have appellate jurisdiction, *Dabrowski v. Bartlett*, 246 Ariz. 504, ¶ 13 (App. 2019), and it is a question of law that we review de novo, *Yee v. Yee*, 251 Ariz. 71, ¶ 7 (App. 2021).

¶8            On March 24, 2021, the trial court issued an unsigned order in which it concluded that Doe lacked standing and granted the motions to dismiss on that ground. On April 9, Doe filed a motion for reconsideration and for a new trial, which the court denied in another unsigned order on May 6. On May 7, the court entered final judgment, signing and certifying the judgment pursuant to Rule 54(c), Ariz. R. Civ. P.

¶9            On May 13, Doe filed a Rule 59, Ariz. R. Civ. P., motion for a new trial ("first post-judgment motion"). On June 7, while the motion was pending, Doe filed her notice of appeal from the final judgment. We stayed the appeal to permit the trial court the opportunity to rule on the pending motion for a new trial. While the stay was still in effect, on August 26, Doe again moved for a new trial, pursuant to Rule 59, and for relief from the judgment, pursuant to Rule 60, Ariz. R. Civ. P. ("second post-judgment motion"). We dismissed Doe's appeal on October 12, after the trial court failed to enter a signed order on the pending first post-judgment motion for a new trial.[2]

¶10          On November 12, the trial court denied Doe's second post-judgment motion, signing and certifying that ruling as final pursuant to Rule 54(c). Doe appealed on December 8, specifying she was challenging the November 12 ruling, the May 7 final judgment, and "any and all other adverse minute entries, orders, rulings, decrees, and decisions of any kind related to the final judgments in this matter." In February 2022, we stayed that appeal, noting that the trial court's order denying the first post-judgment motion for a new trial was still unsigned. On February 9,

---

[2]Our mandate on that order of dismissal was issued November 17, 2021.

the trial court entered a signed minute entry denying the first post-judgment motion.

**¶11** Our jurisdiction is established by statute and is generally "limited to appeals from final judgments which dispose of all claims and parties." *Madrid v. Avalon Care Ctr.-Chandler, L.L.C.*, 236 Ariz. 221, ¶ 3 (App. 2014) (quoting *Baker v. Bradley*, 231 Ariz. 475, ¶ 9 (App. 2013)); *see also* A.R.S. § 12-2101(A)(1). A motion for new trial under Rule 59(a) and a motion for relief from the judgment under Rule 60 are time-extending motions that toll the time for appeal until the trial court enters a signed order disposing of the last remaining motion.[3] Ariz. R. Civ. App. P. 9(e)(1)(D), (E).

**¶12** The first post-judgment motion was still pending on December 8, 2021, when Doe filed her second notice of appeal. *See Klebba v. Carpenter*, 213 Ariz. 91, ¶¶ 6-7, n.3 (2006). Appellate review was premature and effectively suspended pursuant to Rule 9(e)(2), Ariz. R. Civ. App. P., until the trial court entered its signed order denying the first post-judgment motion in February 2022. Thus, we have jurisdiction to review the final judgment and, pursuant to A.R.S. § 12-2102(B), the denial of the first post-judgment motion for a new trial.

**¶13** However, we lack jurisdiction over the denial of the second post-judgment motion. The trial court's November 12 order was void because that court lacked jurisdiction to consider Doe's motion until our mandate issued some days later. *See Budreau v. Budreau*, 134 Ariz. 539, 541 (App. 1982) (while appeal pending, trial court lacks jurisdiction to consider Rule 60 motion unless litigant applies to this court for revestment of jurisdiction for that specific purpose); *Hobbs v. Condry (In re Estate of Condry)*, 117 Ariz. 566, 568 (App. 1977) (appellate court may exercise discretion to revest jurisdiction in trial court for limited period and specific purpose of determining matters specified in appellate order). Appellate jurisdiction is derivative and because the trial court lacked jurisdiction, we do as well. *Webb v. Charles*, 125 Ariz. 558, 565 (App. 1980).

---

[3]A Rule 60 motion extends the time to file a notice of appeal only if it is filed no later than fifteen days after entry of judgment. Ariz. R. Civ. App. P. 9(e)(1)(E). A Rule 59(a) motion must be filed within fifteen days after entry of judgment. Ariz. R. Civ. P. 59(b)(1).

## Discussion

**¶14**     We review de novo the grant of a Rule 12(b)(6) motion to dismiss. *Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, 245 Ariz. 397, ¶ 8 (2018). We "will affirm only if, 'as a matter of law[, Doe] would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Id.* (quoting *Fid. Sec. Life Ins. Co. v. State,* 191 Ariz. 222, ¶ 4 (1998)).

### Standing

**¶15**     The Defendants' motions to dismiss primarily asserted that Doe lacked standing to bring the claims given her prior bankruptcies and that her claims were time-barred because the revived statute of limitations was inapplicable. In granting those motions, the trial court determined that Doe had adequately pled vicarious liability and that her claims qualified for the revived statute of limitations, but that she lacked standing to pursue them because they belonged to her bankruptcy estate.

**¶16**     On appeal, Doe contends the trial court erred in determining she lacked standing to sue the Defendants because her claims, which had accrued in her name before her bankruptcy filings in 1993 and 2004, were barred by the statute of limitations at the time of the bankruptcy filings, rendering them non-existent when she sought bankruptcy protection.[4] The Defendants counter that because Doe's claims accrued before her bankruptcy filings and were not disclosed to her estate, as a matter of law, only the bankruptcy trustee has standing to pursue them regardless of the expired statute of limitations.

**¶17**     Subject to exceptions inapplicable here, a Chapter 7 bankruptcy estate "is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.

---

[4]Doe does not raise any issue regarding the trial court's rulings on her post-dismissal motion and first post-judgment motion. The court determined that although Doe asserted the bankruptcy had been reopened with the trustee prepared to pursue the claims as a real party in interest, no reconsideration or new trial was warranted because Doe still lacked standing and no one had sought leave to substitute into the case as a real party in interest. But because Doe does not offer arguments on appeal, the issue is waived. *See* Ariz. R. Civ. App. P. 13(a)(7); *Ritchie v. Krasner*, 221 Ariz. 288, ¶ 62 (App. 2009) (failure to present significant arguments supported by authority waives issue on appeal).

§ 541(a)(1). Section 541(a)(1) is interpreted broadly and includes tort causes of actions that have accrued before the commencement of the bankruptcy. *See Cusano v. Klein*, 264 F.3d 936, 945-47 (9th Cir. 2001); *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, ¶¶ 53-54 (App. 2015) (debtor's pre-petition tort claim is property of bankruptcy estate); *cf. Segal v. Rochelle*, 382 U.S. 375, 379 (1966) ("[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."). When a cause of action accrues is a matter of state law. *Cusano*, 264 F.3d at 947. Accrual for the purposes of determining property of a bankruptcy estate may occur before a statute of limitations begins to run, due to principles of discovery and tolling. *Id.*

¶18        Federal law creates "an express, affirmative duty [on the debtor] to disclose all assets, including contingent and unliquidated claims." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (emphasis omitted) (quoting *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-08 (5th Cir. 1999)). This includes claims for which the debtor does not know all of the facts or the legal basis, so long as there is enough information to suggest a possible cause of action. *Coastal Plains*, 179 F.3d at 207-08; *see Boisaubin v. Blackwell (In re Boisaubin)*, 614 B.R. 557, 562 (B.A.P. 8th Cir. 2020) (property of the estate includes "causes of action that a debtor could have brought at the time of filing a petition," even if debtor is unaware). If the debtor fails to fully disclose required property to the bankruptcy estate, the interest remains in the estate, and only a bankruptcy trustee has standing to pursue it. *Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (2001); *see Cusano*, 264 F.3d at 945-46 (assets not properly disclosed do not revert to the debtor).

¶19        The Defendants contend that the claims Doe seeks to assert belong to the bankruptcy estate and the trustee has exclusive standing to assert them. Doe does not contest that her claims had accrued before the filing of her first bankruptcy. She counters, however, that because the statute of limitations had expired, she, and consequently her bankruptcy estate, had no interest to pursue "as of the commencement of the [bankruptcy] case," quoting § 541(a)(1).

¶20        While we agree with the Defendants that claims which have accrued before the filing of bankruptcy generally belong to the bankruptcy estate, we disagree that the statute of limitations is irrelevant, and conclude Doe's claims are distinguishable on that ground. Defendants cite no authority, state or federal, concerning a claim in a procedural posture such

as Doe's—a pre-petition claim where the parties agree on appeal that the statute of limitations had expired prior to filing the bankruptcy but were revived by statutory changes. Nor have we discovered any. For the reasons discussed below, we agree with Doe that the then-existing statute of limitations had barred her claims before the commencement of her bankruptcies and the claims were no longer "legal or equitable interests" that either she, or the estate, had "in property as of the commencement of the case." § 541(a)(1). Accordingly, the trial court erred in determining Doe lacked standing to pursue the current suit against the Defendants.

¶21　　　Standing to sue is a question of law that we review de novo. *Home Builders Ass'n of Cent. Ariz. v. Kard*, 219 Ariz. 374, ¶ 8 (App. 2008). A party has standing to sue if, under all circumstances, the party has an interest in the litigation's outcome. *All. Marana v. Groseclose*, 191 Ariz. 287, 289 (App. 1997).

¶22　　　Although § 541(a) broadly defines a debtor's interests that become property of a bankruptcy estate, "neither § 541(a), nor any other Bankruptcy Code provision, answers the threshold questions of whether a debtor has an interest in a particular item of property and, if so, what the nature of that interest is." *Universal Coops., Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149, 1153 (4th Cir. 1988) (citing *State v. Farmers Mkts., Inc. (In re Farmers Mkts., Inc.)*, 792 F.2d 1400, 1402 (9th Cir. 1986)). Although this case involves federal bankruptcy proceedings, Arizona law determines the nature and extent of a debtor's interest in property. *See Foothill Cap. Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir. 1997); *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). The applicability of a statute of limitations "concerns the nature and extent" of an interest.[5] *Luu v. Newrez, LLC*, 253 Ariz. 159, ¶ 18 (App. 2022).

¶23　　　In Arizona, a statute of limitations "identif[ies] the outer limits of the period of time within which an action may be brought to seek redress or to otherwise enforce legal rights," extinguishing the legal right if not enforced by the deadline. *Cox v. Ponce*, 251 Ariz. 302, ¶ 14 (2021) (quoting *Porter v. Spader*, 225 Ariz. 424, ¶ 7 (App. 2010)). Under the statute of limitations initially applicable to her claims, Doe was required to

---

[5]As discussed above, this is distinguishable from the accrual of a claim for the purposes of determining property in a bankruptcy, which is not affected by when the statute of limitations begins to run. *See Cusano*, 264 F.3d at 947.

"commenc[e] and prosecut[e] [the claims] within two years after the cause[s] of action accrue[d], and not afterward." § 12-542(1). Thus, Doe's failure to bring her claims within the two-year period would generally bar her action. *See Rowland v. Kellogg Brown & Root, Inc.*, 210 Ariz. 530, ¶ 6 (App. 2005). To determine whether a claim is time-barred, we consider four factors: when the cause of action accrued, the applicable statute of limitations, when the plaintiff filed her claim, and whether the limitations period was suspended or tolled for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

**¶24**         Doe's claims were time-barred at the time she sought bankruptcy protection. The parties agree that Doe's claims had accrued by 1990 when she reached the age of eighteen; that the applicable limitations period at the time was two years, which had been tolled until she reached the age of eighteen; and that Doe did not file her claims until the statutory period was revived. The claims being time-barred, her legal right was extinguished in 1992, *see Cox*, 251 Ariz. 302, ¶ 14, and she had no legal or equitable interest in the claims at the commencement of her bankruptcies in 1993 and 2004, *see* § 541(a)(1). Rather than being contingent, *see Hamilton*, 270 F.3d at 785, Doe's property interest was effectively terminated and of no value, *see Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 496, 503-04 (5th Cir. 2006) (section 541(a)(1) provides temporal limitation and debtor must have pre-petition interest in remedy "at the commencement of the case"). In *Burgess*, the United States Court of Appeals for the Fifth Circuit concluded that a "crop-disaster-relief payment" was not property of the bankruptcy estate because although the debtor sustained his crop losses pre-petition, the statute authorizing payment on those losses was not enacted until after the debtor was discharged. *Id.* at 495-96. Citing *Goldstein v. Stahl (In re Goldstein)*, 526 B.R. 13, 23 (B.A.P. 9th Cir. 2015), the trial court here distinguished *Burgess* and similar cases on the grounds that Doe's right to sue, like that of the debtors in *Goldstein*, was created pre-bankruptcy. We agree, but this distinction does not acknowledge that Doe's right was extinguished by the time of her bankruptcy filings, putting her in the same position as the debtor in *Burgess*, not as the debtors in *Goldstein*, at the commencement of her bankruptcy proceedings. *See* § 541(a)(1); *Goldstein*, 526 B.R. at 23 ("[debtors'] ability to file [the claims] did not require enactment of new legislation").

**¶25**         A bankruptcy estate has no more rights in property than those held by the debtor before the bankruptcy, thus an "estate's ability to realize upon such interests is subject to whatever limitations existed on the petition date." *Sparhawk v. Davis (In re Rens)*, 633 B.R. 594, 602 (B.A.P. 9th Cir. 2021).

9

Doe's claims were no longer pre-petition property in 1993 or 2004, *see* § 541(a)(1), and neither she, nor her bankruptcy estate, had the legal right to pursue them, *see Cox*, 251 Ariz. 302, ¶ 14; *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." (quoting D. Baird, *Elements of Bankruptcy* 97 (6th ed. 2014))).

**¶26** The Defendants correctly assert that a statute of limitations is an affirmative defense that is waived if not raised. *See Ritchie v. Krasner*, 221 Ariz. 288, ¶ 56 (App. 2009) (citing *Uyleman v. D.S. Rentco*, 194 Ariz. 300, ¶ 10 (App. 1999)). Therefore, they contend, Doe's claims were not actually time-barred in 1993 or 2004, even if she could not have *successfully* brought them. We find this argument unpersuasive. Although the statute of limitations is an affirmative defense, "claims that are clearly brought outside the relevant limitations period are conclusively barred." *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, ¶ 7 (App. 2017) (quoting *Montaño v. Browning*, 202 Ariz. 544, ¶ 4 (App. 2002)); *cf. Garza v. Swift Transp. Co.*, 222 Ariz. 281, ¶ 15 (2009) (dismissal without prejudice appealable if statute of limitations has run because action has been, in effect, determined); *Andrews ex rel. Woodard v. Eddie's Place, Inc.*, 199 Ariz. 240, ¶ 1 (App. 2000) (application of statute of limitations reviewed de novo). Because Arizona law determines the nature and extent of a debtor's interest in property, *Luu*, 253 Ariz. 159, ¶ 18, and Doe's claims would have been time-barred, her interest had been extinguished, *see* § 12-542(1); *Cox*, 251 Ariz. 302, ¶ 14.[6]

**Sufficiency of the Pleading**

**¶27** The Salvatorians contend that even if the trial court erred in determining Doe lacked standing to pursue her claims against it, her allegations were not properly pled to state a claim that she qualified for the revived statute of limitations, and the court's dismissal should be affirmed

---

[6]Doe maintained below that the statute of limitations on her claims had expired, and the trial court found that her claims "could not have been pursued in 1993 or 2004 because the statute of limitations barred such pursuit." To the extent the Salvatorians assert that Doe's argument on appeal is incongruous because she had asserted in her complaint that the statute of limitations was tolled, it does not develop any argument as to how this affects the appeal and we do not address it. *See Ritchie*, 221 Ariz. 288, ¶ 62.

on that basis.[7] Doe counters that because the court found in her favor on this issue, the Salvatorians cannot challenge it absent a cross-appeal, but, in any event, the allegations in her complaint were properly pled. We may affirm a dismissal if correct for any reason, S*w. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, ¶ 10 (App. 2014), so we address the argument.

¶28 In their motions to dismiss, the Defendants argued that Doe had not alleged in her complaint that they had actual knowledge or notice of Verhagen's or Bretl's alleged misconduct, and thus, her claims did not qualify for the revived statute of limitations. The trial court disagreed and, assuming the truth of Doe's allegations, determined her claims qualified for the revived statute of limitations.

¶29 The Salvatorians reassert on appeal that "no factual or non-conclusory allegations have been levied against [it] to demonstrate that it 'knew or otherwise had actual notice' of any risks posed by Verhagen or Bretl." It contends the "conclusory allegations [in Doe's complaint] that do no more than parrot the 'knew or otherwise had actual notice' legal standard without identifying previous[] misconduct are insufficient to bring a time-barred claim under the [revived statute of limitations]."

¶30 In a note to A.R.S. § 12-514, our legislature, explaining the "[a]pplicability" of the revived statute of limitations, provided,

> A cause of action revived pursuant to subsection B of this section may be brought against a person who was not the perpetrator of the sexual conduct or sexual contact if that person knew or otherwise had actual notice of any misconduct that creates an unreasonable risk of sexual conduct or sexual contact with a

---

[7]The Roman Catholic Church of the Diocese of Phoenix and St. Mark Roman Catholic Parish Phoenix note that the revived statute of limitations "significantly limited claims against non-perpetrators of alleged abuse" but unlike the Salvatorians, do not make substantive arguments on appeal about the sufficiency of Doe's complaint. Therefore, any argument that Doe's allegations in her complaint against those defendants were insufficient is waived on appeal. *See* Ariz. R. Civ. App. P. 13(a)(7); *Ritchie*, 221 Ariz. 288, ¶ 62.

minor by an employee, a volunteer, a representative or an agent.

2019 Ariz. Sess. Laws, ch. 259, § 3(C).[8]

**¶31**        "Arizona follows a notice pleading standard, the purpose of which is to 'give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved.'" *Cullen*, 218 Ariz. 417, ¶ 6 (quoting *Mackey v. Spangler*, 81 Ariz. 113, 115 (1956)). To state a claim for relief, a pleading must include "a short and plain statement of the claim," Ariz. R. Civ. P. 8(a)(2); it is unnecessary for evidentiary details to be alleged in the complaint, *Verduzco v. Am. Valet*, 240 Ariz. 221, ¶ 9 (App. 2016). Therefore, we look only to the complaint's well-pled factual allegations. *Cullen*, 218 Ariz. 417, ¶ 7; *Sw. Non-Profit Hous. Corp.*, 234 Ariz. 387, ¶ 10. "The test is whether enough is stated to entitle the pleader to relief on some theory of law susceptible of proof under the allegations made." *Verduzco*, 240 Ariz. 221, ¶ 9 (quoting Daniel J. McAuliffe & Shirley J. McAuliffe, *Arizona Civil Rules Handbook* at 21 (2015 ed.)).

**¶32**        Doe's complaint alleged that the Salvatorians "knew or should have known that Verhagen and or Bretl sexually abused young Catholic children" and "knew or should have known of Verhagen's and Bretl's propensity to sexually abuse children." She further alleged the Salvatorians had "kept the news of [Verhagen's and Bretl's] sexual abuse and propensity to engage in sexual abuse from church members, including [Doe] and her family," following orders that "all matters and details regarding clergy sexual abuse be kept absolutely secret." Additionally, she alleged that the Salvatorians followed orders "allowing a priest accused of sexual abuse to be transferred to a new assignment without ever disclosing the priest's history of sexual abuse" and "allowed priests under their supervision and control to have contact with minors after becoming aware of allegations of sexual misconduct."

**¶33**        The Salvatorians do not dispute that it was on notice of Doe's claims. And contrary to its assertions, Doe's allegations are not merely a conclusory parroting of the law. Given Arizona's liberal pleading standard, *see Verduzco*, 240 Ariz. 221, ¶ 12, the facts alleged by Doe may be reasonably interpreted for a finding that the Salvatorians "knew or otherwise had

---

[8] Subsection B permitted a previously time-barred claim to be commenced before December 31, 2020. *See* 2019 Ariz. Sess. Laws, ch. 259, § 3(B).

actual notice of any misconduct that create[d] an unreasonable risk of sexual conduct or sexual contact with a minor by an employee, a volunteer, a representative or an agent," 2019 Ariz. Sess. Laws, ch. 259, § 3(C); *see* Ariz. R. Civ. P. 8(a)(2). Thus, the trial court did not err in concluding Doe's claims, as pled, were sufficient to state a claim that she qualified for the revived statute of limitations.

### Costs on Appeal

**¶34**　　　　Doe and the Salvatorians request costs on appeal pursuant to A.R.S. §§ 12-331, 12-341, and 12-342.[9] As the successful party on appeal, Doe is entitled to her reasonable costs on appeal upon compliance with Rule 21, Ariz. R. Civ. App. P. *See* § 12-341 (successful party in civil action shall recover costs). As it was unsuccessful on appeal, we deny the Salvatorians' request for costs.

### Disposition

**¶35**　　　　For the foregoing reasons, we vacate the trial court's judgment dismissing Doe's complaint and remand for further proceedings consistent with this decision.

B R E A R C L I F F E, Judge, dissenting:

**¶36**　　　　Given the allegations in the complaint, the equities certainly do not favor affirming the trial court's dismissal of Jane Doe's claims. But as a matter of law, I cannot see a way to avoid doing so. The court correctly concluded that Doe's claim must be pursued, if by anyone, by the bankruptcy trustee. Therefore, I respectfully dissent.[10]

**¶37**　　　　Federal Bankruptcy law clearly provides—even after the (fairly) recent comprehensive amendments to the code—that a Chapter 7 debtor's claims arising before filing of a bankruptcy petition belong to the bankruptcy trustee. 11 U.S.C. § 541(a)(1) (bankruptcy estate consists of "all legal or equitable interests of the debtor in property" at commencement of the case); *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001); *Desert Palm*

---

[9]The Roman Catholic Church of the Diocese of Phoenix and St. Mark Roman Catholic Parish Phoenix have not requested costs on appeal.

[10]Because I would uphold the trial court's dismissal of the matter, I would also leave all remaining questions raised on appeal to be addressed, if at all, in any future proceeding brought by the bankruptcy trustee.

*Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, ¶¶ 53-54 (App. 2015).  That is, because a debtor's legal claim may have value as an asset with which to satisfy the debtor's obligations to creditors, the trustee becomes the exclusive holder of the claim to do just that. 11 U.S.C. § 323; *Segal v. Rochelle*, 382 U.S. 375, 379-80 (1966); *Est. of Spirtos v. San Bernardino Cnty. Case No. SPR 02211*, 443 F.3d 1172, 1175-76 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate.").

**¶38**　　　Two things are true here:　(1) Doe's claims arose pre-bankruptcy and (2) the original two-year statutorily prescribed statute of limitation for the claims (as opposed to any judicially recognized period of equitable tolling) had passed by the time of her first bankruptcy petition. Because her claims arose before her 1993 bankruptcy filing, and certainly before her second petition, those claims belong to the bankruptcy trustee until resolved or abandoned—this is so even if Doe did not know about the claim, did not believe it was still viable, or simply failed to list the claim on her bankruptcy schedules.  *Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (2001); *Boisaubin v. Blackwell (In re Boisaubin)*, 614 B.R. 557, 562 (B.A.P. 8th Cir. 2020).  And, notwithstanding that the two-year statute of limitations for her claims had passed before those bankruptcies, her claims were not conclusively barred and were then, and remain today, assets of the estate.

**Doe's Claims Are Bankruptcy Estate Assets Notwithstanding When Brought**

**¶39**　　　Even though this action was brought well after Doe's bankruptcy cases were resolved, because her claims here relate to harms Doe suffered before she filed for bankruptcy first in 1993, the claims are assets of the estate.[11]  In *Segal*, 382 U.S. at 376, a business partnership and

---

[11]As the Majority correctly points out, tort causes of action that have "accrued" before the commencement of the bankruptcy are part of the bankruptcy estate.  *See Cusano*, 264 F.3d at 945-47.  But courts have "muddied the waters" by conflating "accrual" for purposes of determining whether property is part of the bankruptcy estate and "accrual" for purposes of determining when the statute of limitations begins to run for a cause of action.  *In re Swift*, 129 F.3d 792, 796 (5th Cir. 1997).  The two concepts are different.  *Cusano*, 264 F.3d at 947 ("It is important . . . to distinguish principles of accrual from principles of discovery and tolling, which may cause the statute of limitations to begin to run *after accrual has*

its individual partners, the Segals, filed voluntary bankruptcy petitions in September 1961. After that filing, and after the end of the 1961 calendar year, the partners sought loss-carryback tax refunds. *Id.* These refunds related to losses "suffered by the partnership during 1961 prior to the filing of the bankruptcy petitions" and "carried back to the years 1959 and 1960 to offset net income on which the Segals had both paid taxes." *Id.* The bankruptcy trustee and the Segals both claimed a right to the tax refunds—the Segals because they could only legally apply for the refunds *after* the filing of their petition, and the trustee because the refunds related to taxes paid *before* the filing of the bankruptcy petition. *Id.* at 376-78.

¶40 The 5th Circuit concluded that "the loss-carryback refund claims were both 'property' and 'transferable' at the time of the bankruptcy petition" even though they could not yet have been applied for "and hence had passed to the trustee," notwithstanding when the refunds were actually received. *Id.* at 377-78. As noted by the Supreme Court, other circuits addressing the issue had concluded otherwise, determining that refund claims were "too tenuous" to fall within the bankruptcy estate or that federal anti-assignment statutes barred a transfer of such an interest to the trustee. *Id.*

¶41 At the time of the *Segal* opinion, § 70(a)(5) of the Bankruptcy Act (11 U.S.C. § 110(a)(5)) provided in relevant part that

> (a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means

---

*occurred for purposes of ownership* in a bankruptcy proceeding.") (emphasis added). Regardless of the time period for which a statute of limitations begins to run, if all of the elements of the claim arose prior to the bankruptcy, it "accrued" and became property of the bankruptcy estate. *See In re Alipour*, 252 B.R. 230, 233-35 (Bankr. M.D. Fla. 2000) ("For purposes of § 541, the test is whether all of the elements of the cause of action had occurred as of the time that the bankruptcy case was commenced, so that the claim is sufficiently rooted in the debtor's prebankruptcy past.").

> have transferred or which might have been
> levied upon and sold under judicial process
> against him, or otherwise seized, impounded,
> or sequestered . . . .

*Id.* at 377, n.1. The pivotal question for the Court was whether a potential claim for tax refunds constituted "property" which "could by any means have transferred" before the filing of the bankruptcy petition. *Id.* As the Court noted, the "main thrust" of the statute is "to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition." *Id.* at 379. "To this end," the Court stated "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Id.*

¶42 But the Court also recognized the competing goal of allowing the debtor to be "free after the date of his petition to accumulate new wealth in the future," most notably reflected in that the future wages of a bankrupt or "intended bequests" to the bankrupt do not become property of the estate even though, under state law, they could be transferred to the debtor in advance. *Id.* at 379-80. After considering those competing goals, the Court determined that the loss-carryback refund claims were "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start" such that they should be deemed "property" under § 110(a)(5) at the time of the bankruptcy filing.[12] *Id.* at 380. Consequently, the Court determined that the refund claims belonged to the trustee and not the Segals. *Id.*

¶43 Here, because Doe's claims arise from abuse allegedly committed against her before the filing of her first bankruptcy petition, the claims are "sufficiently rooted in [her] pre-bankruptcy past." *Id*. And, because any compensation recovered is to remedy those past harms, under *Segal*, her claims are not "entangled" with her "ability to make an unencumbered fresh start."[13] *Id.* As a result, Doe's claims were, at the time

---

[12] Notwithstanding that the claims were property, the question remained whether, as property, the claims "could by any means have transferred" before the filing of the petition. *Id.* at 381. That question was relevant given vagaries of federal tax law, but is not relevant here.

[13] The 1978 Bankruptcy Code eliminated the requirement, recognized in *Segal*, that a disputed asset not be "entangled in the debtor's ability to make a fresh start," *see* S. Rep. No. 95-989, at 82 (1978), *as reprinted in* 1978

of her bankruptcy petition, assets of the bankruptcy estate subject to collection by the trustee to satisfy her creditors.

**Chronological Passing of the Statute of Limitations Did Not Bar Doe's Claims in 1993 as a Matter of Law**

¶44 Doe does not argue that if she had any other nascent legal claim before she filed bankruptcy, she could have rightfully omitted it from her bankruptcy schedules or withheld it from the trustee and pursued it herself outside of bankruptcy. She asserts, rather, that these claims, while once something a bankruptcy trustee could have pursued, ceased to be an asset *at all* in 1992 once the prescribed two-year statute of limitations in A.R.S. § 12-542 passed. And, because the claims were "stale" by 1993, she asserts, they had no value and there was nothing to pass to the trustee at the time of either of her two petitions, notwithstanding the Arizona Legislature's later 2019 revival of the claims. The majority agrees, concluding that Doe had "no legal or equitable interest" in the claim after 1992 because it "was effectively terminated and of no value." However, because the mere chronological passing of the two-year statute of limitations in § 12-542 did not, by itself, bar Doe's claims, I disagree.

¶45 First, where a party brings a claim for injuries more than two years after the acts causing the harm, and the acts are thus facially stale under a statute of limitations, for the statute of limitation to actually bar the action the defendant must first affirmatively raise it. *Ritchie v. Krasner*, 221 Ariz. 288, ¶ 56 (App. 2009). Once raised, a court must then adjudicate it. *See Anson v. American Motors Corp.*, 155 Ariz. 420, 421 (App. 1987) (once raised court must resolve whether, in light of tolling claim, "plaintiff will not be entitled to relief under any set of facts susceptible of proof under the claims stated"). Although a defendant need not assert the statute of limitations defense in his original answer, and may raise it at any time by an amended answer before judgment, he must, nonetheless, raise it. *Romos v. Reyes*, 26 Ariz. App. 374, 376 (1976). As with other affirmative defenses, the statute of limitations defense can be deemed waived if the defendant does not raise it at all, whether purposefully or inadvertently. *Krasner*, 221 Ariz. 288, ¶ 56. If the statute of limitations defense is raised before trial, but after judicially established deadlines, it may similarly be deemed waived. *See Uyleman v. D.S. Rentco*, 194 Ariz. 300, ¶¶ 10, 13 (App. 1999) (although

---

U.S.C.C.A.N. 5787, 5868; *see also Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425 (9th Cir. 1984), thus broadening the scope of assets within the bankruptcy estate.

trial court has discretion to permit amendment of answer to assert limitations defense at any time before trial, it may refuse such amendment where "a party repeatedly amends its complaint or answer yet fails to identify a meritorious theory or defense" and "invite[s] scrutiny as to whether counsel has simply been careless or is constantly shifting legal positions to suit the facts"). And, if not asserted in the trial court at all, the defense may not be raised on appeal due to appellate waiver. *Eans-Snoderly v. Snoderly*, 249 Ariz. 552, n.5 (App. 2020). And further, a defendant may, for whatever personal reason—public relations, guilt, etc.—elect not to assert the defense at all.

¶46        Second, even if the statute of limitations is affirmatively raised, procedural requirements and equitable relief can overcome it. *Cox v. Ponce*, 251 Ariz. 302, ¶ 14 (2021). Under the discovery rule, our courts do not deem a claim to have accrued—for statute of limitation purposes—until the party bringing suit "discovers or reasonably should have discovered" that he was harmed and that an identifiable person caused the harm. *Stulce v. Salt River Project Agric. Improvement & Power Dist.*, 197 Ariz. 87, ¶ 10 (App. 1999). Until each of those things has occurred, the victim has not "discovered" his claim, and the two-year statutory period does not even begin to run from the wrongful act. *Flood Control Dist. v. Gaines*, 202 Ariz. 248, ¶ 17 (App. 2002). Whether and when such discovery has occurred is a question of fact to be resolved by the trier of fact if a limitations defense is asserted. *Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, ¶ 19 (App. 2011); *see Logerquist v. Danforth*, 188 Ariz. 16, 21 (App. 1996) (discovery rule available for plaintiffs who were sexually abused, repressed those memories, and, after remembering the abuse, brought complaints after statute of limitations ran).

¶47        In addition to the application of the discovery rule, a trial court can toll the statute of limitations due to a claimant's disability. *Doe v. Roe*, 191 Ariz. 313, ¶ 41 (1998) (tolling for a claimant's unsound mind). A court can also grant relief from a statute of limitations for excusable neglect, *Cox*, 251 Ariz. 302, ¶ 14, and can estop a defendant from asserting the statute of limitations if he "engaged in conduct that induced a plaintiff to forego litigation by leading the plaintiff to believe his claim would be settled without the necessity of litigation," *Nolde v. Frankie*, 192 Ariz. 276, ¶ 15 (1998). A court can also toll the statute of limitations for fraudulent concealment. *Anson*, 155 Ariz. at 427-28. Again, all such equitable relief is granted by the court only after the limitations defense is asserted. *See McCloud v. State, Ariz. Dep't of Pub. Safety*, 172 Ariz. 82, ¶¶ 8-9 (App. 2007).

**¶48**          Here, Doe's claims were only facially barred in 1992.  They were not actually barred.  Had Doe disclosed her potential claim to the bankruptcy trustee, and had he pursued it, the Appellees would certainly have been able to raise the statute of limitation defense; the trustee's rights in a cause of action are no greater than a debtor's rights after all.  *In re Rens*, 633 B.R. 594, 602 (9th Cir. B.A.P. 2021).  But, in 1993, the Appellees would still have needed to raise the statute of limitations defense affirmatively.  Had they failed or refused to do so, Doe's claim, brought by the trustee, would have proceeded normally to trial or settlement.  It is, of course, practically inconceivable, as Doe argues, that the Appellees would not have raised the statute of limitations then.  Indeed, the Appellees asserted that very defense in this litigation.  Nonetheless, whether in 1993 or otherwise, the trustee could also have sought the benefit of the discovery rule, equitable tolling, or estoppel—just as Doe herself did here.

**¶49**          I cannot say therefore, as the majority concludes, that Doe's claims were conclusively barred by virtue of the chronological passing of the statute of limitations and that she had "no legal or equitable interest" in them when she first filed for bankruptcy.  Doe's claims were "causes of action" that she "could have brought at the time of filing a petition," even if she—or the trustee—would have ultimately faced an affirmative defense like the statute of limitations.  *See Boisaubin*, 614 B.R. at 562.  As such, at the time of each bankruptcy filing, Doe had a legal and equitable interest in her causes of action and they were then, and are now, an asset belonging to the trustee until resolved or abandoned.  *Cusano*, 264 F.3d at 945-46.

**¶50**          The majority relies extensively on *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 496, 503-04 (5th Cir. 2006), as a contrast to *Segal*, on which this dissent relies.  Although certainly worth the discussion, the claims in *Burgess* are fundamentally different from the claims here and those in *Segal*.  In *Burgess*, the debtor's claim to crop-disaster relief payments did not exist as a property right or otherwise at the time of his bankruptcy filing.  *Id.* at 507.  After his bankruptcy estate and case was closed, Congress created a right to crop-loss relief covering Burgess's pre-bankruptcy losses that had never existed before.  *Id.* at 495.  During the pendency of his bankruptcy, the bankruptcy trustee could not have applied for crop-disaster relief payments on behalf of the estate, because there were none to apply for.  It was not a matter of the government having to assert the defense that he had waited too long to raise his claims; rather, Burgess had no right to make them at all.

¶51        In *Segal*, of course, the right to loss-carryback tax refund payments, subject to a taxpayer meeting certain qualifications, existed at the time of the Segals' bankruptcy filing.  And the Segals' right to receive a refund of earlier overpaid taxes was at least contingent.  The Segals' entitlement to and the amount of such loss-carryback refunds could not be determined until they sought them after the close of the tax year, which in the Segals' case was after their bankruptcy case was closed.  *Segal*, 382 U.S. at 381-82.  It was not a matter of, as in *Burgess*, Congress creating the right to tax loss-carryback refunds after the Segals' bankruptcy was closed.  *See In re Marvel*, 372 B.R. 425 (Bankr. N.D. Ind. 2007) (extensive discussion distinguishing circumstances and nature of claims in *Segal* and *Burgess*).

¶52        Similarly here, Doe's claim for personal injury damages from those who harmed her was not a new statutory or even constitutional right created after the abuse occurred or even after her bankruptcy petition was filed.  Doe had a common-law right, recognized before and since Arizona's territorial days, for compensation from those who caused her personal injuries.  *See Alabam's Freight Co. v. Hunt*, 29 Ariz. 419, 443 (1926) (action in negligence is a common-law action).  Indeed, our legislature and executive are barred to this day from abrogating the right to or limiting damages for such common-law causes of action.  *See* Ariz. Const. art. XVIII, § 6 ("The right of action to recover damages for injuries shall never be abrogated . . . ."); *see also* Ariz. Const. art. II, § 31 ("No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person . . . ."); *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, ¶ 34 (2013) (constitution prohibits abrogation of common law actions for negligence, intentional torts and other actions tracing origins to the common law).  These constitutional protections do not preclude the statute of limitation that *regulated* the pursuit of Doe's claims of course.  *Rutledge v. State*, 100 Ariz. 174, 180 (1966) ("The legislature may impose a reasonable time within which an action must be brought to recover damages recoverable under a constitutional provision.").  But recognized equitable relief from limitations periods—such as fraudulent concealment and the discovery rule—could have been asserted to preserve her claims.  *See Tom Reed Gold Mines Co. v. United E. Mining Co.*, 39 Ariz. 533 (1932).

¶53        The distinction between the long-standing nature of Doe's claims in the common law and the existing, pre-bankruptcy nature of the claims in *Segal* on the one hand, and the nature of the statutory claims at issue in *Burgess*—being freshly enacted and non-existent at the time of bankruptcy—makes a difference.  It is perhaps something that a higher

court needs to resolve, and I urge the parties to bring this to our Supreme Court for resolution.

¶**54**       As it is, the power of the bankruptcy code to sweep within its grasp every asset of the debtor was intended by Congress.  11 U.S.C. § 541(a)(1); *Imperial Assur. Co. v. Livingston*, 49 F.2d 745, 748 (8th Cir. 1931) ("The broad purposes of the act are to permit (voluntary) or to compel (involuntary) a debtor to turn over all of his property to the court for the benefit of his creditors, to have set aside therefrom his exemptions and to be discharged from further liability to such creditors.").  The goal of the Bankruptcy Act is to compensate the debtor's creditors to the fullest extent possible.  *Reed v. City of Arlington*, 650 F.3d 571, 576-77 (5th Cir. 2011).  Recognizing that Doe's claims are reserved to the trustee until pursued to the end or abandoned is consistent with the purposes of the Act, even though it seems grossly unfair to Doe today.[14]  I would affirm the trial court's judgment because I see no other way.

---

[14] As Appellees properly point out, the trial court's judgment reserving these claims to the trustee does not extinguish Doe's claims.  If these claims are pursued by the trustee and if judgment is secured, any amounts recovered in excess of amounts needed to satisfy Doe's creditors will revert to her.  *See* 11 U.S.C. § 726(a)(6); *Time Oil Co. v. Wolverton*, 491 F.2d 361, 365 (9th Cir. 1974).